A. C. EVERETT AND WIFE, ELLA S. EVERETT, v. CAROLINA MORTGAGE COMPANY AND CAROLINA DEBENTURE CORPORATION, INTERVENER.

(Filed 1 February, 1939.)

**1. Execution § 15: Evidence § 9—**

The burden is upon intervener claiming title to funds in the hands of a judgment debtor levied on by a creditor under execution to prove his title to such funds by the greater weight of the evidence.

**2. Bills and Notes § 7b—**

Possession of a note made to bearer is sufficient to place title in the holder, and actual possession is not necessary, it being sufficient if there has been constructive delivery, or possession for collection, even by the original holder or transferee, as agent of the real owner.

**3. Fraudulent Conveyances § 1—**

A corporation may not transfer all of its assets to other than a *bona fide* purchaser for value, without provision for the payments of its creditors.

**4. Fraudulent Conveyances § 8—**

A creditor beginning an action prior to the transfer of assets by defendant is entitled to attack the transfer as fraudulent as to him, although he does not obtain judgment against the defendant until after the transfer of the assets had been accomplished.

**5. Fraudulent Conveyances § 4—**

When a corporation receiving all the assets of another corporation has knowledge of debts of the transferring corporation, or of circumstances which should put it on inquiry as a matter of law, the transaction will be deemed void as to the receiving corporation, and a creditor may follow the funds into its hands.

**6. Fraudulent Conveyances § 3—**

Where a corporation transfers all its assets to another corporation for a grossly inadequate consideration, or no consideration at all, the transaction is fraudulent as to a creditor of the transferring corporation, and he may set aside the conveyance without showing actual fraud, regardless of the intent of the parties to the transfer.·

**7. Fraudulent Conveyances § 2—**

When a transfer of assets by a debtor is in law or in fact fraudulent as to creditors, so as to evade the just claims of the creditors, the mode and devices by which the transfer is made may be ignored and the transaction declared void.

**8. Fraudulent Conveyances § 9: Execution § 15—Held: Intervener failed to show that prior transfer to it of· property by judgment debtor was valid as to judgment creditor.**

Plaintiff obtained a judgment against defendant mortgage company for usury, and levy under execution was had on funds in the bank to the credit of the mortgage company, which funds were derived from the payment to it of a mortgage note. Intervener claimed the mortgage note belonged to it by transfer had prior to the rendition of the judgment, but subsequent to the institution of plaintiff's action. It appeared that defendant mortgage company being insolvent, its assets were transferred to two other corporations for the benefit of the secured creditors, bondholders and the surety for defendant mortgage company, under an agreement among this group of creditors for the liquidation of assets for their benefit, the intervener becoming the assignee of the mortgage note in question under the transfer, and claiming that defendant mortgage company was only its agent for the collection of the note. *Held:* The burden was on intervener to establish title to the funds levied on in the hands of the judgment debtor, and in the absence of evidence that the transfer of the assets of defendant mortgage company was supported by sufficient consideration, the transfer is void as to plaintiff judgment creditor, and an instruction that if the jury believed the evidence to find that intervener was not the owner and entitled to possession of the funds is without error.

APPEAL by intervener, Carolina Debenture Corporation, from *Phillips, J.,* at March Term, 1938, of RICHMOND. No error.

The plaintiffs instituted an action against the defendant Carolina Mortgage Company, on 11 July, 1935, to recover a penalty against this defendant for usury alleged to have been exacted, and at March Term, 1937, of Richmond County Superior Court, secured judgment against said defendant in the sum of $2,228.94, double the usurious interest

paid, together with costs of the action. From this judgment there was no appeal. On 15 April, 1937, plaintiffs caused execution to issue from Richmond County Superior Court, which was returned on 14 May, 1937, wholly unsatisfied. On 6 October, 1937, an *alias* execution was issued, which was levied on a deposit in the name of the defendant Carolina Mortgage Company in the Farmers Bank and Trust Company of Rockingham, amounting to $1,650.00. This was held in the name of the Carolina Mortgage Company on a draft drawn by it on Mrs. Maie Dennis, and was the proceeds of a note given by Mrs. Dennis for a loan obtained from the Carolina Mortgage Company.

The Carolina Debenture Corporation obtained an order of court, upon which it intervened, claiming the funds levied upon as its own.

The Maie Dennis note was secured by a deed of trust executed to Carolina Mortgage Company, trustee, to secure the same, and the note, made to bearer, was held by the Mortgage Company. The Mortgage Company issued a great number of bonds, pledging the notes and mortgages held by it upon its customers as collateral to secure them. These loans in a large amount were guaranteed by the Maryland Casualty Company.

The evidence tends to show that the Carolina Mortgage Company was unable to pay the bonds so issued, and became insolvent. The Maryland Casualty Company, finding itself embarrassed by its guaranty to pay the bonds, undertook to bring about a refinancing of the obligations of the Mortgage Company, and the procurement of a loan from the Reconstruction Finance Corporation to make such financing possible.

There were two plans finally offered to the holders of the bonds of the Mortgage Company, the evidence tending to show that one plan so adopted received about ten per cent acceptance by the creditor bondholders, and the other plan received about ninety per cent acceptance.

Under the latter plan, the bondholders were to receive $300.00 in cash and $700.00 in debentures, issued by the Carolina Debenture Corporation, for each $1,000.00 bond of the Mortgage Company. It is claimed by the defendants that the Maie Dennis note became the property of the Carolina Debenture Corporation on 28 May, 1936, as part of the program of refinancing, and that in turn it was one of a great number of mortgages made to the Carolina Mortgage Company which became pledged to the Reconstruction Finance Corporation for a loan.

The evidence tends to show that in addition to the Carolina Debenture Corporation, the Carolina Bond Corporation was organized to facilitate the refinancing under Plan No. 1. A committee was appointed by the Maryland Casualty Company and the bondholders, by which committee it was determined "which collateral was up" for options 1 and 2, which committee got information as to the various mortgages which were held,

and these were partitioned as collateral according to the information they received. As to this proceeding, E. C. Murphy testified:

"Those bonds were parceled out in Baltimore, I believe. The actual delivery of the bonds was in Baltimore. No, sir, it did not take place at the office of the bank in Raleigh. No, the notes and mortgages did not leave the bank in Raleigh in a bulk to go to Baltimore, to be parceled out. The partition was all agreed upon before the mortgages were removed from Raleigh, actually. The mortgages, securing the outstanding bonds, were removed from Raleigh in May, 1936, between May 20th and May 30th. I don't know about their being moved to Baltimore. I understand Mr. Le Master was here when the bonds were removed. I did not check the bonds out myself."

With regard to the course of title of the Maie Dennis note and mortgage through the various transactions by which the refinancing was accomplished, the defendants point out that the Carolina Mortgage Company entered into a trust agreement in 1936 with the Commercial National Bank of Raleigh (the predecessor in the trust of Security National Bank of Greensboro), whereby the said bank should act as trustee and hold the notes as security for the payment of the bonds to be issued by the Carolina Mortgage Company, and that it pledged the notes to the trustee in pursuance of this. It appears from the original agreement, dated 3 August, 1926, that the Maie Dennis note and mortgage was so assigned. Reference is further made to the refinancing plan, and especially to the debenture agreement under option 2, dated 1 December, 1933, executed by the Carolina Mortgage Company, Carolina Debenture Corporation, Carolina Bond Corporation, and Maryland Casualty Company, under which it was agreed to exchange the new issue of bonds for those held, transferring the collateral supporting the old bonds in security for the new, and special reference is made to this clause: "It being contemplated and intended that as soon as practicable collateral securing the exchanged bonds which may constitute assets of the corporation shall be substituted in place of any and all exchanged bonds as assets of the corporation."

With regard to the actual transfer of the Maie Dennis note, reference is made by the defendants to the testimony of E. C. Murphy (R., pp. 61, 62), as follows: "The new bonds were issued by Carolina Bond Corporation and the Debenture Corporation prior to the time the mortgages were removed from North Carolina; they were issued early in 1934, but the details were not completed until May, 1936."

Mr. J. M. Sink, Assistant Trust Officer of the Security National Bank of Greensboro (successor trustee), testified (R., p. 71):

"I do have the receipt issued to us by the Reconstruction Finance Corporation. It consists of fourteen hundred and some-odd papers of

the exhibits attached to these receipts. This receipt is dated May 23, 1936, the date on which the trust was actually closed out. On that date we closed out the Carolina Mortgage Company."

And on page 72: "Yes, we received that receipt and the paper writing you showed me, purporting to be receipt from the Reconstruction Finance Corporation, dated May 23, 1936, for 1,431 separate pieces or groups of collateral, is the receipt. . . . The schedule is attached to the receipt listing loan 1982, name of the mortgagor, Mrs. Maie Dennis, widow; mortgagee, Carolina Mortgage Company, trustee, dated July, 1926, balance eight notes, $2,000.00."

And on page 73: "Yes, we did deliver to the Reconstruction Finance Corporation the trust receipt of Carolina Mortgage Company attached to Exhibit N, which I have identified, the original of that. I was present. There was no written contract. The Maie Dennis paper was allocated. . . . We delivered the Maie Dennis papers to the Carolina Debenture Corporation and immediately received the Reconstruction Finance Corporation receipt."

E. C. Murphy testified (R., p. 49): "The Carolina Mortgage Company, prior to May, 1936, had received the Maie Dennis papers from the Security National Bank, trustee, for the purpose of collection or foreclosure. We executed a receipt for them to the Security National Bank, trustee. That is right, the papers did not pass to the Reconstruction Finance Corporation. The trust receipt passed."

The evidence tends to show that the Carolina Mortgage Company put up all the capital stock for the organization of the Carolina Bond Corporation used in Plan 1 of the refinancing, and also of the intervener, Carolina Debenture Corporation, used in Plan 2, with which this case is more concerned. It shows also that the principal offices of these two corporations were the same as those of the Carolina Mortgage Company. It discloses further that, in the process of refinancing, all of the assets of the Carolina Mortgage Company were transferred either to the one corporation or to the other, or to the Carcen Corporation, formed for the handling of the free assets of the Carolina Mortgage Company, leaving the Carolina Mortgage Company without assets. "This receipt is dated May 23, 1936, the date on which the trust was actually closed out. On that date we closed out the Carolina Mortgage Corporation." Testimony of E. C. Murphy (R., p. 71).

E. C. Murphy, witness for the intervener, further testified (R., p. 66): "There is no written conveyance from the Carolina Mortgage Company to the Carolina Debenture Corporation, covering this Maie Dennis note and mortgage, except these general agreements here in evidence." And J. P. Le Master, president of the corporation and witness for the intervener, testified (R., p. 77): "It was acquired by written contract." And

on page 80: "The written instrument which I hold is the instrument under which the Carolina Debenture Corporation claims ownership of the mortgage referred to in this case.":

The intervener accounts for the possession of the Maie Dennis note in the hands of the Carolina Mortgage Company at the time of its collection and the deposit of the proceeds in the bank by introducing a written agreement by which the Carolina Mortgage Company undertook to "service," that is, in this instance, "collect" as agent for the owners, the notes and mortgages formerly belonging to them.

Upon this evidence the plaintiffs contended both in the court below and here: First, that no title to the Maie Dennis note passed to the Debenture Corporation, and that there is no evidence tending to show such a transaction; second, if it should appear that title to this item passed, then it is undisputed from the evidence that the Carolina Mortgage Company transferred all of its assets, or the greater part, to the Debenture Corporation, and that under the circumstances of the transfer the Debenture Corporation was held to a knowledge of the fact that this was done without reservation of any fund to pay creditors and was, therefore, a legal fraud and void as against the levy of plaintiffs upon the funds in the hands of the Carolina Mortgage Company, no matter by what pretext or device they held it; third, that the Carolina Debenture Corporation was at the time of the transaction a mere subsidiary corporation, in which the Mortgage Company held the entire stock, and the attempted transaction conveyed no title thereto such as to divest from the Carolina Mortgage Company the ownership of its assets, as against the claims of creditors; and, fourth, that the Carolina Debenture Corporation was created and intended as a mere fraudulent device, for the purpose of removing the assets of the Carolina Mortgage Company from reach of its creditors, and in furtherance of this fraud the property of the Mortgage Company was transferred to it, and the transaction is, therefore, void as to plaintiff creditors.

One issue was submitted to the jury: "Is the Carolina Debenture Corporation, intervener, the owner and entitled to the possession of the funds seized by the plaintiffs in this action?" Thereupon, the judge gave the following instruction to the jury: "Upon this issue, the court charges you, if you find all the facts to be as testified to by the witnesses in this case, and further find the facts to be as the evidence tends to show, you will answer this issue 'No.' "

To this instruction, the defendants excepted.

*Jones & Jones for plaintiffs, appellees.*

*W. G. Mordecai and Varser, McIntyre & Henry for Carolina Debenture Corporation, appellant.*

SEAWELL, J. The burden was upon the intervener to establish, by the greater weight of the evidence, its ownership of the funds levied upon by the plaintiffs. The plaintiffs say that the intervener has not carried this burden, contending that there is no evidence in the record of any delivery to the intervener of the Maie Dennis note, upon the proceeds of which levy was made.

The note was payable to bearer, therefore want of actual endorsement would not defeat the title of the holder. In some doubtful cases, delivery is largely a matter of intent, and the manner of the delivery is unimportant; even "retention of possession by the maker is not fatal to the valid delivery where there has been an intent to deliver and the maker holds the instrument as agent of the payee." 10 C. J., 520. And the want of actual physical delivery of the note by the person originally holding the same would not be fatal to the title if such person became the agent of the real owner for collection. 10 C. J., 520.

The evidence respecting delivery of the note, actual or constructive, need not be material to the consideration of the case, since it may be decided on an issue less involved. The evidence discloses that the Carolina Mortgage Company, at the time an insolvent concern, transferred all of its assets concurrently to the Carolina Bond Corporation, the Carolina Debenture Corporation—the intervener in this case—and the Carcen Company. The fact that the property so transferred consisted largely of equitable interests in mortgages and notes, which may have been of doubtful value, makes no difference to a discussion of the principles involved. One other transfer took place during the succession of transactions reviewed in this case—the transfer of $1,000.00, represented by the total stock of the Debenture Corporation, to the Maryland Casualty Company. The time relation between the latter transfer and other pertinent incidents in the case does not exactly appear, but this is not important to the result.

The principle that a corporation may not transfer all of its assets to other than a *bona fide* purchaser for value, without provision for the payment of its creditors, is very generally accepted. 13 Am. Jur., p. 1121, sections 1233, 1234; 7 R. C. L., p. 573, section 561; 14A C. J., p. 884, section 3064; *Darcy v. Brooklyn Ferry Co.,* 196 N. Y., 99, 89 N. E., 461; *McIver v. Hardware Co.,* 144 N. C., 478, and cases cited on p. 484, 57 S. E., 169; *Sweeney v. Heap O'Brien Mining Co. and Grand Haven Mining Co.,* 186 S. W. (Mo.), 793; *Kentucky Beaver Colliers, et al., v. Mellon and Smith,* 254 S. W. (Ky.), 421. This rule is modified and conditioned so as to show some differences in its application in various jurisdictions, but the main principle is the same. It may be considered as a proper extension of the "trust fund" doctrine, as recognized in this State. *McIver v. Hardware Co., supra.*

We consider that the plaintiffs in this action were entitled to the protection afforded by this principle of law as other creditors, since they had begun their action before the transfer of the assets of the defendant Carolina Mortgage Company had been accomplished, although the actual judgment was not obtained until after that date. *Avery v. Safety Cab & Storage Co.,* 80 P. (2nd Series), 1099.

Where the corporation receiving the assets of another corporation under the circumstances indicated had knowledge of the existence of debts of the transferring corporation, or of circumstances, which as a matter of law, should put it on inquiry, the transaction will be deemed void as to the receiving corporation, and a creditor may follow the funds into its hands. "Of course, a corporation holds its property subject to the payment of the corporate debts, and when a corporation sells or transfers its entire property to a purchaser, knowing the fact, the latter is chargeable with knowledge that the property is subject to the corporate debts and that equity will, in proper cases, allow the corporate creditors to follow the property into the hands of the purchaser, for satisfaction of their claims." 7 R. C. L., p. 573, section 561, and cases cited.

Whatever may be the difference in the principle announced in the various jurisdictions dealing with this question, where the sale and purchase of the assets were for a valuable consideration, and whatever the status of the purchasing corporation under such circumstances, and whatever the procedure required in cases where it may become necessary to show actual fraud in the transaction, such distinctions do not apply to instances where there was a grossly inadequate consideration, or no consideration at all. In such cases, regardless of the intention of the parties, the transaction amounts to a legal fraud upon creditors. It strips the corporation of its assets, to which the creditor has a right to resort for the payment of his debt, and substitutes therefor, without his consent, the naked liability of officers and directors who have violated their trust, and who are often financially irresponsible.

In the case at bar, the transfer of assets was made to the intervener— the Carolina Debenture Corporation—a corporation entirely owned by the defendant Carolina Mortgage Company and having substantially the same responsible officers. This by no means diminishes the propriety of applying the rule. *Avery v. Safety Cab & Storage Co., supra.* And the inference of notice, even of intimate knowledge of the condition of the parent corporation and of its inability to make a fair and equitable transfer of its property to its infant creation, seems unavoidable.

In order to maintain its title to the funds in dispute, the burden was upon the intervener not only to show that the item had been assigned to it and, at least, constructively delivered, but, also, we think, under the

circumstances of this case, in order to support the transfer, there should be some evidence of a valuable consideration. We do not find such evidence in the record, but, indeed, such inferences as we may draw from the evidence lead to a contrary view. The devices employed, the creation of these new corporations by the Carolina Mortgage Company, including the Carolina Debenture Corporation, seem to have been prompted by a desire to save the bondholders of the Mortgage Company, and particularly the guarantor—the Maryland Casualty Company— from substantial loss, while unsecured debts and other liabilities of the Mortgage Company were ignored. The interposition of the Debenture Corporation between the Mortgage Company and its unsecured creditors seems to serve no substantial purpose except to render the assets of the Mortgage Company unavailable to pay its unsecured debts.

The plan apparently did not regard an exchange of values as necessary. The Debenture Corporation merely acquired the assets of the Mortgage Company and participated in their distribution according to a schedule prepared by a committee of the Maryland Casualty Company and the bondholders. The whole transaction seems little more than the attempted taking, through corporate devices, of the entire property of the Mortgage Company by a preferred class of creditors, and a partition thereof amongst them, with no return to the Mortgage Company except a way out. This is not morally or legally satisfying to a creditor whose claim is ignored, and is a method of liquidation which stands somewhat opposed to the principles of law and equity, and is, needless to say, unauthorized.

It is sufficient to say that, on the face of the record, we cannot find evidence of that *quid pro quo* which might serve as a consideration and give to the transfer of its assets by the Mortgage Company to the Debenture Corporation the necessary quality of good faith to support the transaction, or to require a different procedure on the part of the prejudiced creditor to attack it.

If the Corporation has disposed of its property fraudulently, either in fact or in law, so as to evade the just claims of the creditor, and the property has gone into the hands of other than a *bona fide* purchaser, we may ignore the devices by which the assets were wrongfully divested from the Mortgage Company and by which they were returned to it as being void upon the above announced principles, and regard the proceeds of the Maie Dennis note, now in the hands of the Mortgage Company, as being there by original right of ownership, or we may regard the holder as being charged with the trust in favor of the creditor; and when the assets have been subjected to levy by a judgment creditor and the holder intervenes, and both are, therefore, parties to the proceeding, the Court will administer the equities and execute the trust by enforcing the levy.

In this case, the inferences to be drawn from the evidence are in such agreement that the court below was justified in the instruction given to the jury.

We have examined the exceptions to rejection of evidence, as well as other exceptions in the record not here mentioned, and find

No error.