JAMES THOMAS DIXON v. JOHN A. SHELTON

No. 7021SC483

(Filed 16 September 1970)

1. Animals § 2— injury inflicted by horse — evidence of injury
    In a veterinarian's action to recover damages for injuries received when he was kicked by defendant's horse during a pregnancy examination of the horse, the trial court properly excluded plaintiff's testimony relating to his facial scars resulting from the kick, where there had been no previous testimony that the plaintiff had been kicked by the horse.

2. Animals § 2— injury inflicted by horse — testimony by plaintiff's physician
    In a veterinarian's action to recover damages for injuries received when he was kicked by defendant's horse during a pregnancy examination of the horse, the trial court properly excluded testimony by plain-

Dixon v. Shelton

tiff's physician that the plaintiff had been kicked by a horse, where the testimony was not within the personal knowledge of the physician.

3. **Animals § 2— injury inflicted by horse — injury to veterinarian — competency of evidence**

In a veterinarian's action to recover damages for injuries received when he was kicked by defendant's horse during a pregnancy examination of the horse, plaintiff was not prejudiced by his witness' testimony on cross-examination that plaintiff had taken no other precautions on walking behind the horse than "just being slow and easy," where (1) the witness had previously testified to everything that had been done by plainitff in preparing for the examination, including the fact that plaintiff had not used a twitch or hobbles but had instructed the witness to hold up one of the horse's forefeet, and (2) a subsequent expert witness testifying for plaintiff stated that the method used by plaintiff was the one commonly used in the county.

4. **Animals § 2— injury inflicted by horse — testimony of seller — nonexpert testimony of observations**

In a veterinarian's action to recover damages for injuries received when he was kicked by defendant's horse during his pregnancy examination of the horse, the trial court correctly allowed the seller of the horse to testify as to what she had observed from years of experience "as to technique or approach to the horse" during a pregnancy examination, the seller not being asked to give an opinion as an expert.

5. **Rules of Civil Procedure § 50— motion to set aside verdict**

A motion to set aside the verdict as being against the greater weight of the evidence is directed to the sound discretion of the presiding judge, whose ruling is not reviewable on appeal in the absence of abuse of discretion.

6. **Animals § 2— injury inflicted by horse — evidence of vicious propensities**

In a veterinarian's action to recover damages for injuries received when he was kicked by defendant's horse during a pregnancy examination of the horse, the trial court properly overruled plaintiff's motion to set aside the verdict for defendant as being against the greater weight of the evidence, where the only evidence relating to the vicious propensity of the horse was testimony that defendant's younger daughter fell from the horse some four years prior to plaintiff's accident.

APPEAL by plaintiff from *Johnston, J.,* 26 January 1970 Session of FORSYTH Superior Court.

Plaintiff seeks to recover damages for injuries received when he was kicked by defendant's horse. When the injuries were inflicted, the plaintiff, a veterinarian, was performing a pregnancy test by rectal examination of the mare. He alleges that the "riding horse was possessed of dangerous, vicious, mis-

chievous and ferocious habits, being an animal which, on oc-
casions, displayed excitable and unmanageable habits which
were known to the defendants to be dangerous to mankind." De-
fendant's motions for directed verdict were overruled. The jury,
in answer to issues to which there were no objections, found that
defendant was the owner and keeper of the horse but that it
was not one "possessing a vicious propensity." Plaintiff appeals.

   *White, Crumpler and Pfefferkorn, by Joe P. McCollum, Jr.,*
*for plaintiff appellant.*

   *Hudson, Petree, Stockton, Stockton and Robinson, by John*
*M. Harrington, for defendant appellee.*

   MORRIS, J.

   [1, 2]   Plaintiff's first four assignments of error are to the ad-
mission or exclusion of evidence. He first contends that the
court committed prejudicial error in striking, on motion of de-
fendant, the following testimony:

   "Q.   Now, do you have any other scars on your face left
   from this thing?

   A.   The one the horse did. The one that comes down this
   way and goes across the eyebrow to right here (indicat-
   ing)."

At that point, there had been no evidence introduced from any
witness that plaintiff had been kicked by a horse. Indeed, the
plaintiff had testified "I do not remember seeing the horse till
this day." He remembered nothing of what occurred except that
he went to defendant's house to inquire where the horse was.
He further testified that he did not regain consciousness for
some nine to twelve days. This evidence was properly stricken.
Similarly, he contends that testimony of the doctor who treated
him should not have been stricken. Dr. de la Torre was asked
to refer to his notes and "tell us when you first saw him and
what you found at that time." The physician answered: "On
July 6, '66, he was admitted to Forsyth Memorial Hospital by
Doctor Starling, a general surgeon, who called me about him,
and I saw him that day. He had been kicked by a horse, on that
day." On motion of defendant, the last statement was stricken
and the jury instructed not to consider it. Plaintiff contends
the physician should be allowed to testify "upon his personal
knowledge based on an examination of the injured party . . . as

to the nature and extent of the injuries, or disfigurement; . . .
[and] the cause of the suffering allegedly endured by plaintiff."
3 Strong, N.C. Index 2d, Medical Testimony, § 50, pp. 683 and
684. While we do not disagree with plaintiff as to the principle
of law upon which he relies, we do not think it applicable. Obvi-
ously, from plaintiff's own evidence, the physician could not
have obtained from plaintiff any history of how the injuries were
received nor was that information within his personal knowl-
edge. This evidence was also properly stricken.

[3] The young man who assisted the plaintiff by holding the
"lead shank" and the mare's left forefoot, at the direction of
plaintiff, testified in detail with respect to the procedure used
by plaintiff and what occurred from the time they went to the
defendant's pasture until the plaintiff was injured. He testified
that he followed the plaintiff's instructions; that he was hold-
ing the lead shank in one hand, and the mare's foot in the other;
that he was holding the horse's foot approximately three feet
off the ground; that as plaintiff began his examination, the
horse seemed slightly nervous, so he stopped for a few minutes
and rubbed the horse's hind quarters, and the witness put the
horse's foot down; that when he was ready they went through
the same process, the witness getting down and holding the
horse's foot and the lead shank; that he held the leg up as best
he could; that plaintiff had entered the mare with his arm when
she lunged forward, forcing the witness back, and he could see
her kicking the plaintiff in the head; that she had made no
movement at all before she made the sudden lunge forward. The
witness further testified that he did not recall a twitch in the
trunk of plaintiff's car; that he had used a twitch before in
holding a horse and knew how, but that plaintiff did not tell
him to use a twitch; that he did not use any hobbles; that plain-
tiff did not tell him to use hobbles. The witness was then asked,
"Were there any precautions taken when Doctor Dixon walked
around behind this horse?" Over plaintiff's objection witness
was allowed to answer the question, his answer being "None
other, Sir, than just being slow and easy." Plaintiff contends
that the question called for a conclusion from a non-expert. We
fail to see prejudice to plaintiff. The witness had testified to
everything that was done and had then testified that neither
hobbles nor twitch was used. Subsequent expert witness testi-
fying for plaintiff testified that the method used was the one
commonly used in Forsyth County and provided as much re-
straint as other methods, that a horse could not kick with both

feet at the same time with one front leg up, that holding one leg up is an accepted method of restraint when a rectal palpation pregnancy test is being performed. The allowance of the question did not constitute prejudicial error.

[4]    Mrs. Sara Morgan testified that she had been training horses and teaching horseback riding for some 18 years and owned her business known as "Cedar Hollow Farm." She had sold the mare to defendant for his young daughter. She testified that during her years of experience she had quite often observed a horse being tested to determine whether it was in foal. Over plaintiff's objection she was allowed to testify with respect to what she had observed "as to technique or approach to the horse." Plaintiff's objection seems to be based on his contention that the witness was not possessed of expert qualifications on this subject. However, the witness was not asked to give an opinion as an expert. She was merely asked to testify as to what she had observed. This she was competent to do, and the court's ruling was correct.

Plaintiff's first four assignments of error are overruled. The record is replete with evidence as to the nature and extent of plaintiff's injuries which were severe, how they were received, the normal procedure for performing the test which was being performed, the usual and acceptable procedures of restraint used, and the methods used on this occasion. The evidentiary rulings of the court did not result in prejudice to plaintiff.

Plaintiff's next six assignments of error are directed to the charge of the court to the jury. We do not deem it necessary to set out the alleged errors in seriatim. Suffice it to say that we have carefully examined the charge, and when considered as a whole, we find it free from prejudicial error.

[5, 6]    Plaintiff further contends that the trial court erred in overruling his motion to set aside the verdict as being against the greater weight of the evidence. Plaintiff concedes that this motion is directed to the sound discretion of the presiding judge whose ruling is not reviewable on appeal in the absence of abuse of discretion. *Frye and Sons, Inc. v. Francis*, 242 N.C. 107, 86 S.E. 2d 790 (1955). We find no abuse of discretion. On the contrary, the evidence is clear that the only incident known to defendant resulting in injury to anyone was an occasion on which his younger daughter fell from the horse some four years prior to this accident and an occasion when defendant himself fell from

the horse. Defendant argues that no prejudice could have resulted to plaintiff even if errors were committed during the course of the trial for that there was no sufficient evidence upon which to submit to the jury the issues of vicious propensity or knowledge thereof. We, of course, do not discuss the merits of this contention, because it is not before us. We do note, however, that the record is silent as to the ground or grounds for the motions for directed verdict made by defendant. G.S. 1A-1, Rule 50, is explicit in its requirement that "A motion for a directed verdict shall state the specific grounds therefor." See *Wheeler v. Denton*, 9 N.C. App. 167, 175 S.E. 2d 769 (1970). The defendant's failure to state the grounds for his motions was sufficient basis for the court's overruling them.

In the trial of this matter, we find

No error.

BROCK and GRAHAM, JJ., concur.