NYTCO LEASING, INC. v. SOUTHEASTERN MOTELS, INC.; J. WAYNE WILLIAMS; BILL CLEVE AND DAPHNE D. CLEVE

No. 783SC331

(Filed 6 March 1979)

1. **Evidence § 24; Rules of Civil Procedure § 32— use of deposition in court proceedings—deponents present in courtroom**

   To the extent that they are in conflict, G.S. 1A-1, Rule 32 takes precedence over G.S. 8-83; therefore, the trial court did not err in admitting depositions of the defendants, though both were in court and available to be called as witnesses.

2. **Evidence § 24; Rules of Civil Procedure § 32— portions of depositions admitted—no prejudice to defendants**

   Defendants' contention that it was prejudicial for only portions of their depositions to be admitted into evidence was without merit since defendants could have required plaintiff to introduce any other part of the depositions relevant to the part introduced or defendants could have introduced any part they chose. G.S. 1A-1, Rule 32(a)(5).

3. **Rules of Civil Procedure § 50.3— directed verdict—failure to state grounds**

   An appellant who failed to state specific grounds for his motion for directed verdict is not entitled, on appeal from the court's refusal to allow the motion, to question the insufficiency of the evidence to support the verdict.

4. **Rules of Civil Procedure § 50— evidence introduced by defendants—motion for directed verdict waived**

   By introducing evidence, defendants waived their motion for directed verdict made at the close of plaintiff's evidence.

Nytco Leasing v. Southeastern Motels

#### 5. Fraudulent Conveyances § 1— voluntary conveyance defined

A conveyance is voluntary when it is not for value, *i.e.*, when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud.

#### 6. Fraudulent Conveyances § 3.4— no reasonably fair price paid for land—suggestion of unfair dealing and fraud—sufficiency of evidence

There was sufficient evidence that defendant wife did not pay defendant husband a reasonably fair price for parcels of land conveyed by him to them both as tenants by the entirety such as would indicate unfair dealing and be suggestive of fraud to take the case to the jury, where such evidence tended to show that each of the deeds in question recited a consideration of only $10; there were no revenue stamps affixed to any of the deeds; the properties were worth approximately $375,000; and there was no evidence to contradict the recitals in the deeds.

#### 7. Fraudulent Conveyances § 3.4— retention of property sufficient to pay debts—sufficiency of evidence

Evidence was sufficient to be submitted to the jury on the question as to whether defendant husband retained properties fully sufficient to pay debts then existing so that the conveyances in question would be valid as to creditors where such evidence tended to show that defendant transferred most of his assets to a tenancy by the entirety, thereby placing them beyond the reach of his creditors; except for the parcels of land in question, defendant had few other assets at the time; and the transferred property was worth approximately $375,000 and therefore would have been adequate to satisfy plaintiff's judgment against defendant.

#### 8. Fraudulent Conveyances § 3.4— conveyance to family member—fraudulent intent—sufficiency of evidence

When property is sold to a family member for less than its reasonable value and the grantor is unable to pay his debts, the close family relationship is strong evidence of fraudulent intent; therefore, evidence of a close family relationship between grantor and grantee, *i.e.*, husband and wife, evidence that conveyances of the land in question were made less than five weeks after service of summons and complaint on defendant husband seeking substantial monetary damages, and evidence that a reasonably fair value was not paid for the conveyances was sufficient evidence from which the jury could reasonably infer fraudulent intent on the part of defendant husband.

#### 9. Fraudulent Conveyances § 3.4— fraudulent intent—grantee's knowledge—sufficiency of evidence

In an action to set aside conveyances of real property on the ground that they were made with the intent to defraud creditors, evidence that the grantee knew of the grantor's fraudulent intent was sufficient to be submitted to the jury where it tended to show that defendant husband transferred all of his real estate to his wife for less than its reasonable value, that he had never before in 20 years of marriage transferred any real property to his wife, and that he transferred not some, but all, of his real property to himself and his wife in an estate by the entirety at that time.

**10. Fraudulent Conveyances § 2— judgment obtained by creditor after assets transferred—attack on conveyance proper**

> A creditor beginning an action prior to the transfer of assets by defendant is entitled to attack the transfer as fraudulent as to him, although he does not obtain judgment against the defendant until after the transfer of the assets has been accomplished.

APPEAL by defendants from *Small, Judge*. Judgment entered 21 November 1977 in Superior Court, CRAVEN County. Heard in the Court of Appeals 17 January 1979.

This is an action by plaintiff to set aside certain conveyances of real property by defendant Bill Cleve, to himself and his wife as tenants by the entirety on the ground that the conveyances were made with the intent to defraud creditors, including plaintiff.

The parties stipulated to the following facts: Defendants Bill and Daphne Cleve are husband and wife; on 2 November 1973, plaintiff initiated an action in superior court against defendant Bill Cleve and others seeking to recover $286,113.98; on 13 November 1973, summons and complaint in the action were served on defendant Bill Cleve; on the date of service of process and up until 18 December 1973, defendant Bill Cleve owned as his separate property 10 parcels of real property in North Carolina; on 18 December 1973 defendant Bill Cleve conveyed all 10 parcels to himself and his wife as tenants by the entirety. On 19 June 1974, plaintiff obtained a $290,830.40 judgment in its action against defendant Bill Cleve, and the judgment was subsequently affirmed by this Court; executions on the judgment were issued between 15 July 1974, and 27 December 1976, but were returned unsatisfied each time; defendant Bill Cleve has paid nothing on the judgment.

Plaintiff offered evidence tending to show the following:

From 1950 to 1973, there were no other conveyances of real estate from defendant Bill Cleve to himself and his wife as tenants by the entirety. Each of the ten 1973 deeds recites a consideration of $10, and there were no revenue stamps affixed to any of the deeds.

By depositions previously taken of the defendants Cleve, plaintiff also offered evidence tending to show that defendants

Cleve had been married for 20 years; that on 18 December 1973, defendant Bill Cleve had very little money on deposit and was trying to borrow to pay off debts; that defendant Bill Cleve had a car and a life insurance policy but very few other assets that were worth anything; that he owned some stock, but it was either worth nothing or was pledged as collateral on loans; that he owed Wachovia Bank and Trust Company $60,000 and owed his wife $54,000; and that the property which he conveyed from himself to himself and his wife as tenants by the entirety on 18 December 1973 was worth approximately $375,000.

Defendants offered evidence tending to show that in the fall of 1973 defendant Bill Cleve's finances were not as solvent as they had been at one time and that he was seeking a loan to pay off his debt to Wachovia; that Production Credit Association agreed to make a loan only if defendant Daphne Cleve signed the loan application with her husband; that she refused to do so until her husband agreed to give her an interest in his real property as security; that she signed two loan papers on 11 December 1973; and that she also agreed to cancel her husband's $54,000 debt to her in exchange for the property. Mrs. Cleve admitted, however, that she had not demanded payment on her husband's note to her after its due date on 20 July 1973, prior to its cancellation.

Five issues were submitted to the jury and answered as follows:

1. Was anything of value given by Daphne D. Cleve for the conveyances by Bill Cleve of land on December 18, 1973 to himself and his wife creating an estate by the entirety?

Answer: No

2. If the answer to the first issue is yes, was it a reasonably fair value?

Answer: _____

3. Did the defendant Bill Cleve retain property fully sufficient and available for the satisfaction of his creditors after the conveyances of land on December 18, 1973?

Answer: No

4. Did the defendant Bill Cleve with the purpose and intent to delay, hinder or defraud his creditors convey land to himself and his wife creating an estate by the entirety?

Answer: Yes

5. If the answer to the fourth issue is yes, did the grantees, Bill Cleve and Daphne D. Cleve, participate in, or have actual notice of the purpose and intent to delay, hinder, or defraud the creditors of Bill Cleve?

Answer: Yes

Judgment entered pursuant to the verdict declared the ten deeds to be "utterly void and of no effect" as to creditors of defendant Bill Cleve, including plaintiff. From the judgment, defendants Bill and Daphne Cleve appealed.

*Sanford, Cannon, Adams & McCullough, by E. D. Gaskins, Jr., Charles C. Meeker and Barbara Mills Larkin, for plaintiff appellee.*

*James, Hite, Cavendish & Blount, by E. Cordell Avery and Marvin Blount, Jr., for defendant appellants.*

CARLTON, Judge.

[1]   Defendant first assigns as error the admission of depositions of the defendants Cleve when both were in court and available to be called as witnesses. Timely objections and motions to strike were overruled and denied. We agree with the trial court's rulings.

The question presented here is whether G.S. 1A-1, Rule 32 takes precedence over G.S. 8-83. We hold that it does.

Rule 32 provides that at trial any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of several provisions. Among those provisions is Section (a)(3) which reads as follows:

The deposition of a party or of any one who at the time of taking the deposition was an officer, director, or managing

agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose, *whether or not the deponent testifies at the trial or hearing.* (Emphasis added.)

G.S. 8-83 provides that depositions may be read at trial only in certain situations enumerated by the statute, and not otherwise. The statute covers such situations as when a witness is dead, insane, a resident of a foreign country or of another state and not present at trial, confined in a prison outside the county in which the trial takes place and when the witness is so old, sick or infirm as to be unable to attend court. None of the listed situations would apply to the case at bar.

Defendants concede that the two statutes are in conflict. They argue, however, that G.S. 8-83 controls because G.S. 1A-1, Rule 1 provides that, "These rules shall govern the procedure in the superior and district courts of the State of North Carolina in all actions and proceedings of a civil nature *except when a differing procedure is prescribed by statute.*" (Emphasis added.) Defendants argue that G.S. 8-83 is a "differing procedure" and, therefore, should control.

We do not believe that G.S. 8-83 is a "differing procedure" within the contemplation of the quoted language from Rule 1. Prior to the effective date of the Rules of Civil Procedure (January 1, 1970), G.S. 8-83 was the controlling statute for "every deposition taken." It defined the general use of depositions in civil trials before the Rules of Civil Procedure became effective and was never intended to prescribe a "differing" or specialized procedure. Moreover, in enacting the Rules of Civil Procedure, the legislature removed any doubt about conflicting statutes such as these by providing that, "All laws and clauses of laws in conflict with this Act are hereby repealed." 1967 North Carolina Session Laws, c. 954, s. 9.

It is well established that when there are two acts of the legislature applicable to the same subject, their provisions are to be reconciled if this can be done by fair and reasonable intendment, but to the extent that they are necessarily repugnant, the

one last enacted shall prevail. *Highway Commission v. Hemphill*, 269 N.C. 535, 153 S.E. 2d 22 (1967).

We therefore hold that, to the extent they are in conflict, G.S. 1A-1, Rule 32 takes precedence over G.S. 8-83.

**[2]** Defendants also argue that it was prejudicial for only portions of the depositions to be admitted. That argument is obviously without merit in that defendants could have required plaintiff to introduce any other part of the depositions relevant to the part introduced or defendants could have introduced any part they chose. G.S. 1A-1, Rule 32(a)(5).

Defendants next assign as error the trial court's denial of their motions to dismiss and motions for directed verdict made at the close of plaintiff's evidence and again at the close of all the evidence.

A motion to dismiss under G.S. 1A-1, Rule 41(b), is properly made only in cases tried by a judge without a jury, the proper motion in jury cases being for a directed verdict under G.S. 1A-1, Rule 50(a). 11 Strong, N.C. Index 3d, Rules of Civil Procedure, § 50.1, p. 329. The denial of the motions to dismiss was therefore proper.

**[3]** G.S. 1A-1, Rule 50(a) contains the requirement that "a motion for directed verdict shall state the specific grounds therefor." The record before us is barren of grounds for a motion for directed verdict. Nor does the judgment supply the grounds. This Court has held that an appellant who failed to state specific grounds for his motion for directed verdict is not entitled, on appeal from the court's refusal to allow the motion, to question the insufficiency of the evidence to support the verdict. *Wheeler v. Denton*, 9 N.C. App. 167, 175 S.E. 2d 769 (1970). The failure of the defendants in this case could have resulted in a dismissal of the appeal. However, we hereinafter review the matter on its merit.

**[4]** By introducing evidence, defendants waived their first motion for a directed verdict, *Hodges v. Hodges*, 37 N.C. App. 459, 246 S.E. 2d 812 (1978) and the assignment of error directed to the denial of that motion will not be considered on this appeal.

We, therefore, proceed to consider whether the trial court erred in failing to grant defendants' motion for directed verdict at

the close of all the evidence. At that stage, the trial judge must consider all of the evidence before him in ruling on the motion. *Overman v. Products Co.*, 30 N.C. App. 516, 227 S.E. 2d 159 (1976). However, the evidence in favor of the nonmovant must be deemed true, all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor. *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973).

The question presented by the defendants' motion for a directed verdict is whether the evidence, when considered in the light most favorable to plaintiff, is sufficient for submission to the jury. *Kelly v. International Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971).

In evaluating the evidence, we first turn to plaintiff's claim for relief based on its allegations that defendants' conveyances were fraudulent and in violation of North Carolina law.

The statutory law of fraudulent conveyances in North Carolina is found in General Statutes of North Carolina, Chap. 39, Art. 3. The leading case is *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914). In *Aman*, the Supreme Court set out the general principles deduced from the statutes as follows:

(1) If the conveyance is voluntary, and the grantor retains property fully sufficient and available to pay his debts then existing, and there is no actual intent to defraud, the conveyance is valid.

(2) If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors; but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution, which is unpaid, and when this is established and the conveyance avoided, subsequent creditors are let in and the property is subjected to the payment of creditors generally.

(3) If the conveyance is voluntary and made with the actual intent upon the part of the grantor to defraud creditors, it is void, although this fraudulent intent is not participated in by the grantee, and although property sufficient and available to pay existing debts is retained.

(4) If the conveyance is upon a valuable consideration and made with the actual intent to defraud creditors upon the part of the grantor alone, not participated in by the grantee and of which intent he had no notice, it is valid.

(5) If the conveyance is upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the grantor, participated in by the grantee or of which he has notice, it is void.

Defendants argue that plaintiff failed to produce sufficient evidence to withstand the motion under the second, third, and fifth principles set forth above which were relied upon by the plaintiff. We do not agree.

[5] Under the first two principles relied upon by plaintiff, the definition of "voluntary" is crucial. Under cases similar to that before us, it has been established that a conveyance is voluntary when it is not for value, *i.e.*, when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud. *Supply Corp. v. Scott*, 267 N.C. 145, 148 S.E. 2d 1 (1966); *Austin v. Staten*, 126 N.C. 783, 36 S.E. 338 (1900). We note that the trial court in its charge to the jury, apparently to avoid confusion by the jury with the customary meaning of voluntary, used the approved language from the cited cases.

[6] The question arises, then, was there sufficient evidence that the defendant Daphne Cleve did not pay the defendant Bill Cleve a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud, to take the matter to the jury? We believe there was.

In considering the propriety of the trial court's ruling on a motion for nonsuit, our Supreme Court was presented with a factual situation similar in many respects to the instant case. In *Everett v. Gainer*, 269 N.C. 528, 153 S.E. 2d 90 (1967), the evidence tended to show that the grantor executed a deed to her sons for "$100.00 and other valuable consideration," that the deed had no revenue stamps affixed thereto, that at the time of the execution of the deed the grantor failed to retain assets sufficient to pay her then existing debts, and that the property had a value of approximately $5,000. The court held that the evidence was sufficient to overrule the motion for nonsuit in an action by a prior

creditor to set aside the deed as fraudulent. The court noted that $100 was "grossly inadequate" consideration and that the addition of the words "and other valuable consideration" failed to make the conveyance valid as to existing creditors. The court also held that the amount of internal revenue stamps, or the absence of internal revenue stamps, is some evidence of the amount of consideration actually paid for the conveyance. In the instant case, each of the ten 1973 deeds recited a consideration of only $10 and no revenue stamps were affixed to any of them. We also note, as did the Supreme Court in *Everett*, that there was no evidence to contradict the recital in the deed, and the burden to explain the nature and character of the consideration is on the defendant.

We therefore hold that the evidence that defendant's wife did not pay him a reasonably fair price for the properties and that the conveyances were "voluntary" under the second and third principles enunciated in *Aman v. Walker, supra*, was more than sufficient for submission to the jury.

[7] Under the second principle promulgated in *Aman*, relied upon by plaintiff, the next consideration is whether the defendant retained properties fully sufficient to pay debts then existing so that the conveyances in question would be valid as to creditors. We find the plaintiff's evidence to be adequate in this respect as well.

It is well established, both in North Carolina and Florida (where defendants Cleve also owned real property), that property held by the entirety is not subject to judgments against either spouse alone. *Air Conditioning v. Douglass*, 241 N.C. 170, 84 S.E. 2d 828 (1954); *Balding v. Fleisher*, Fla. App. 1973, 279 So. 2d 883. Accordingly, in determining the assets available to satisfy defendant Bill Cleve's creditors after the conveyances, all entirety property, whether located in North Carolina or Florida, must be excluded from consideration.

Moreover, a creditor beginning an action prior to the transfer of assets by defendant is entitled to attack the transfer as fraudulent as to him, although he does not obtain judgment against the defendant until after the transfer of the assets has been accomplished. *Everett v. Mortgage Co.*, 214 N.C. 778, 1 S.E. 2d 109 (1939).

In the present case, defendant Bill Cleve effectively transferred most of his assets to a tenancy by the entirety, thereby placing them beyond the reach of creditors. The evidence is plenary that, except for the parcels of land in question, defendant Bill Cleve had few other assets at the time. Evidence also tended to show that the transferred property was worth approximately $375,000 and would, therefore, have been adequate to satisfy the judgment against defendant Bill Cleve. There is also evidence that the judgment still has not been paid. Under the rules stated above, i.e., that the conveyances were "voluntary" and that the plaintiff is a "creditor", the evidence presented by plaintiff was more than adequate to go to the jury under the second principle enunciated in *Aman*.

[8] Plaintiff also argues, and we agree, that its evidence was sufficient to go to the jury under the third theory enunciated in *Aman*. That theory eliminates the requirement that the defendant did not retain adequate property to satisfy existing debts but adds the requirement that the defendant have actually intended to defraud his creditors.

In proving defendant's fraudulent intent, it is only necessary that plaintiff show that defendant conveyed his property with an intent to hinder or delay, or an intent to defraud his creditors. *Peeler v. Peeler*, 109 N.C. 628, 14 S.E. 59 (1891). It is not necessary that intent to defraud be proven by expressed declarations, but it may be shown by the acts and conduct of the parties, from which it may be reasonably inferred. *Manufacturing Company v. Building Company*, 177 N.C. 103, 97 S.E. 718 (1919). Our Supreme Court has also held that when property is sold to a family member for less than its reasonable value and the grantor is unable to pay his debts, the close family relationship is strong evidence of fraudulent intent. *McCanless v. Flinchum*, 89 N.C. 373 (1883).

In the present case, a substantial amount of evidence was presented from which the jury could reasonably infer fraudulent intent on the part of defendant Bill Cleve. Some of the evidence for the plaintiff tended to show a close family relationship between grantor and grantee, i.e., husband and wife, that the conveyances were made less than five weeks after the service of summons and complaint on defendant Bill Cleve seeking substan-

tial monetary damages, and that a reasonably fair value was not paid for the conveyances. Under the third principle enumerated in *Aman*, the evidence was sufficient for jury consideration.

[9] The fifth principle enumerated in *Aman*, also relied on by plaintiff, removes the element of the conveyances being "voluntary" but adds the requirement that the grantee knew of the grantor's fraudulent intent. We agree with plaintiff that adequate evidence on this theory was presented for jury consideration.

In *Peeler, supra*, the Supreme Court stated:

> The fact that the wife appeared to be the purchaser from the husband when he owed another debt to the plaintiff, for the payment of which he had made no provision, still threw such suspicion on the transaction as to call for close scrutiny, as would evidence of any other badge of fraud, notwithstanding the husband and wife may have come upon the witness stand, offered their explanation of it, and thereby removed the presumption that would have arisen from the suppression of evidence within their peculiar knowledge.

*Id.* at p. 634, 14 S.E. 62.

In the present case, plaintiff offered evidence tending to show that defendant Bill Cleve transferred all of his real estate to his wife for less than its reasonable value, that he had never before in 20 years of marriage transferred any real property to his wife and that he transferred not some, but all, of his real property to him and his wife in an estate by the entirety at that time. Clearly, this evidence creates an inference that defendant Daphne Cleve knew of and participated in her husband's intent to defraud creditors.

We therefore hold that, under the second, third and fifth principles enumerated in *Aman*, the evidence was sufficient to go to the jury and defendants' motion for a directed verdict was properly denied.

Defendants' next assignment of error is that the trial court improperly denied defendants' motion to set the verdict aside as contrary to the greater weight of the evidence, in denying their motion in arrest of judgment, and in denying their motion for judgment notwithstanding the verdict. We find no error in the trial court's rulings on these motions.

Defendants' motion for arrest of judgment is not applicable to civil cases, but was a criminal remedy formerly available under G.S. 15-179. *State v. Pinkney*, 25 N.C. App. 316, 212 S.E. 2d 907 (1975).

The motion to set aside the verdict as being against the greater weight of the evidence is directed to the sound discretion of the presiding judge whose ruling is not reviewable on appeal in the absence of abuse of discretion. *Dixon v. Shelton*, 9 N.C. App. 392, 176 S.E. 2d 390 (1970). There is clearly no abuse of discretion in this respect in the case at bar.

A motion for judgment notwithstanding the verdict is simply a motion that judgment be entered in accordance with the movant's earlier motion for a directed verdict and notwithstanding the contrary verdict actually returned by the jury. 11 Strong, N.C. Index 3d, Rules of Civil Procedure, § 50.4, p. 333. The same standards which are applied to a motion for directed verdict are applicable to a motion for judgment notwithstanding the verdict. Thus, upon motion for judgment *non obstante veredicto* under G.S. 1A-1, Rule 50(b)(1) all the evidence which supports plaintiff's claim must be taken as true and considered in the light most favorable to plaintiffs, giving them the benefit of every reasonable inference which may be legitimately drawn therefrom, with contradictions, conflicts and inconsistencies being resolved in plaintiff's favor. *Coppley v. Carter*, 10 N.C. App. 512, 179 S.E. 2d 118 (1971). As stated above, the evidence was abundant to withstand the motion for directed verdict. Here, that same evidence is considered in the light most favorable to the plaintiff. Additionally, at this stage in considering post-verdict motions, the court had before it evidence presented by the defendant which was favorable to the plaintiff. With all the evidence before it, the trial court properly ruled that this was a case for the jury.

Defendants' next assignment of error is that the trial court improperly failed to submit to the jury the issue tendered by him which reads as follows: "Was there an existing debt owing between Bill Cleve and Nytco Leasing, Inc., of which Bill Cleve had knowledge at the time he conveyed property to his wife Daphne Cleve and himself as tenants by entirety on December 18, 1973?"

We agree with the trial court's ruling.

Defendants argue that before intent to defraud creditors can be found, it must be shown that creditors existed. Defendants correctly point out that at the time of the conveyances in question no money judgment against Bill Cleve in favor of plaintiff had been rendered. Defendants argue that the mere filing of a complaint against Bill Cleve does not prove that plaintiff was a creditor of Bill Cleve and therefore an answer to this issue was essential to a finding of fraudulent conveyance.

[10] A creditor beginning an action prior to the transfer of assets by defendant is entitled to attack the transfer as fraudulent as to him, although he does not obtain judgment against the defendant until after the transfer of the assets has been accomplished. *Everett v. Mortgage Co., supra.* In other words, one need not be a judgment creditor to be entitled to the protection of G.S. 39-17. In the present case, the issue tendered by defendants was not raised by the pleadings or the evidence, defendants having stipulated that plaintiff's summons and complaint were served on Bill Cleve prior to the conveyances in question. This assignment of error is, therefore, without merit.

A review of the record with respect to the other assignments of error argued in defendants' brief impels us to conclude that they too are without merit. In the trial below, we find

No error.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.