WILLIAM WASHINGTON AND DWYANETTE WASHINGTON, PLAINTIFFS V. MARILYN
    DEMARLOW MITCHELL, ANNIE MITCHELL, AND CHRISTOPHER LLOYD
    MITCHELL, DEFENDANTS

No. COA00-1348

(Filed 6 November 2001)

**Fraud— fraudulent conveyances—voluntariness—valuable
consideration—reasonably fair price**

   A judgment debtor's conveyances of church lots to family
members-church trustees and burial plots to a family member
were not voluntary and thus were not fraudulent as against plain-
tiff judgment creditors, although the trial court found that the
judgment debtor had actual intent to defraud creditors, where the
family members had no knowledge of the fraud; a $50,000 note
and deed of trust were given by the church to the judgment
debtor for the church lots; the grantee paid the judgment debtor
$500 for the burial plots; there was no evidence from which the
trial court could find that these were not reasonably fair prices;
and the conveyances were thus made for valuable consideration.

   Appeal by plaintiffs from judgment entered 23 May 2000 by Judge
Charles M. Neaves, Jr., in Stokes County District Court. Heard in the
Court of Appeals 18 September 2001.

   *Jeffrey S. Lisson for plaintiffs-appellants.*

   *Mark H. Badgett for defendants-appellees.*

WALKER, Judge.

   In 1991, Andrew Mitchell, father of defendant Marilyn Mitchell
(Marilyn) and defendant Christopher Mitchell (Christopher) and hus-
band of defendant Annie Mitchell (Annie), deeded lots # 122 through
125 (burial plots) and lots # 126 and 127 (church lots) in Stokes
County to Marilyn in separate deeds. On 12 December 1995, plaintiffs
filed a lawsuit in the Superior Court of Forsyth County against
Marilyn, Perry Mitchell (Perry), and Andrew Mitchell. Plaintiffs
alleged that the defendants defrauded them, converted property, and
committed unfair and deceptive trade practices.

   On 17 January 1997, with the case scheduled for trial in February
1997, Marilyn deeded the church lots to defendants Annie and
Christopher, who were trustees in Grace Temple Church (the

Church). Simultaneously, by separate deed, she conveyed the burial plots to Annie "for the purpose of creating a place for a family burial area." Annie paid $500 to Marilyn for these lots. The deed to the church lots had stamps in the amount of $150 placed on it. The deed to the burial lots did not contain stamps but made reference to the church lots deed regarding the stamps.

The Church had begun constructing a church building in 1995 and Marilyn had provided money to the Church from the start of this construction. As a result, the Church incurred a total indebtedness of $75,000 to Marilyn, of which $25,000 was paid to her on `17 January 1997. The balance of $50,000 was to be paid pursuant to an unrecorded agreement and deed of trust placed on the church lots, which the Church executed to Marilyn on 17 January 1997.

On 28 February 1997, the jury found for plaintiffs in their original suit and the trial court entered judgment for $89,848.21 plus interest. Defendants appealed the trial court's judgment and this Court affirmed.

On 23 June 1998, plaintiffs filed the present action to set aside both deeds as fraudulent transfers and requested that the court require the property to be transferred to the plaintiffs and applied to the judgment against the defendants in the original matter. The parties waived a jury and the trial court, after hearing the evidence, made findings of fact including:

Six. On January, 1997, Marilyn Demarlow Mitchell deeded lots # 122 through 125 to Annie Mitchell only, for the purposes of a family burial plot . . . and at the same time in a different deed, Marilyn Demarlow Mitchell did deed to Annie Mitchell and Christopher Lloyd Mitchell lots # 126 and 127 . . . . This is the current property that the church is located on.

Seven. On January, 1997 the Grace Temple Church did execute to Marilyn Demarlow Mitchell an unrecorded agreement and deed of trust in the amount of $50,000.00 for lots # 126 and 127. Andrew Mitchell, Christopher Mitchell and Annie Mitchell, and Marilyn Demarlow Mitchell signed this agreement; no other trustees executed this agreement.

. . .

Nine. On or about the date of the execution of the deed from Marilyn Mitchell to Annie Mitchell and from Marilyn Mitchell to

Annie Mitchell and Christopher Mitchell, Marilyn Mitchell and her parents, Andrew Mitchell and Annie Mitchell, went to David Cathey, Attorney at Law, Winston-Salem, to discuss with him the transferring of the deed concerning the burial site and the church property. He advised them they could transfer the property since there were no judgments against Marilyn Mitchell at the time. A note and deed of trust was [sic] discussed but they never got back to him about preparing the note and deed of trust. . . . Christopher Mitchell was not present at David Cathey's office.

Ten. The evidence indicated that Annie Mitchell paid Marilyn Demarlow Mitchell $500.00 for the lots # 122 through 125 upon which there are no improvements. This is known as the burial plot.

Based on its findings, the trial court concluded in part:

One. That the conveyance from Marilyn Mitchell to Annie Mitchell for the burial lots was not a voluntary conveyance, in that it was transferred for value in the amount of $500.00. The court cannot conclude as a matter of law what the fair market value of these lots were [sic] on January, 1997 but does conclude that the transfer was for value.

Two. The court does conclude as a matter of law that the conveyance from Marilyn Mitchell to Annie Mitchell and Christopher Mitchell, lots # 126 and 127 were [sic] also not voluntary and that they were for value because there was an agreement that the grantor be repaid moneys which she had advanced for construction of the church.

Three. The two transfers of lots # 122 through 127 were made for valuable consideration and were made with the actual intent to defraud creditors.

Four. The court cannot conclude as a matter of law that the grantee, Annie Mitchell, participated in the defrauding of creditors when she paid value for the land and sought the advice of an attorney in paying this value.

Five. Christopher Mitchell did not participate in the defrauding of creditors in that he was not present at the attorneys' office and there is no evidence that he was aware of any impending judgment against her, his sister.

**WASHINGTON v. MITCHELL**

[146 N.C. App. 720 (2001)]

The trial court further concluded that the plaintiffs failed to carry their burden of proof to set aside these deeds.

In a trial without a jury, the judge is required to make findings of fact and conclusions of law. N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (1999). On appeal, this Court must determine whether there is competent evidence to support the findings and whether the findings support the conclusions. *Farmers Bank v. Brown Distributors*, 307 N.C. 342, 345-46, 298 S.E.2d 357, 359 (1983); *Mann Contr'rs, Inc. v. Flair with Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 774, 522 S.E.2d 118, 121 (1999). Here, the record contains the following stipulation of the parties: "[T]he Findings of Fact of the District Court are supported by competent evidence, and that only conclusions of law and the ultimate disposition of this matter are at issue in this appeal." Therefore, this Court needs only to determine whether the conclusions are supported by the findings.

The leading case setting forth the law of fraudulent conveyance in this State is *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914). In that case, our Supreme Court summarized the five principles of fraudulent conveyances as follows:

(1) If the conveyance is voluntary and the grantor retains property fully sufficient and available to pay his debts then existing, and there is no actual intent to defraud, the conveyance is valid.

(2) If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors; but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution, which is unpaid, and when this is established and the conveyance avoided, subsequent creditors are let in and the property is subjected to the payment of creditors generally.

(3) If the conveyance is voluntary and made with the actual intent upon the part of the grantor to defraud creditors, it is void, although this fraudulent intent is not participated in by the grantee, and although property sufficient and available to pay existing debts is retained.

(4) If the conveyance is upon a valuable consideration *and made with the actual intent to defraud creditors upon the part of the grantor alone, not participated in by the grantee* and of which intent he had no notice, it is valid.

(5) If the conveyance is upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the *grantor*, participated in by the *grantee* or of which he has notice, it is void.

*Aman*, 165 N.C. at 227, 81 S.E. at 164 (emphasis in original). The burden is on the plaintiff to show that the conveyance is fraudulent. *Norman Owen Trucking v. Morkoski*, 131 N.C. App. 168, 173-74, 506 S.E.2d 267, 271 (1998).

Here, the trial court found that there was actual intent to defraud creditors on the part of the grantor, Marilyn. It also concluded that Christopher and Annie did not participate in the fraud and had no knowledge of the fraud. These conclusions are not challenged.

Therefore, in order for the plaintiffs to prevail on a claim of fraudulent conveyance, they must prove that the transfers were voluntary and thus void as set forth in the third principle of *Aman*. *Aman*, 165 N.C. at 227, 81 S.E. at 164. A conveyance is considered voluntary "when it is not for value, i.e., when the purchaser does not pay a reasonably fair price such as would indicate unfair dealing and be suggestive of fraud." *Nytco Leasing v. Southeastern Motels*, 40 N.C. App. 120, 128, 252 S.E.2d 826, 832 (1979).

The trial court's findings establish that the deed of trust and the $50,000 note from the Church was given to Marilyn for the church lots. Likewise, the $500 paid to Marilyn for the burial plots established they were conveyed for value.

Because the findings support the conclusion that the two transfers were made for valuable consideration and there was no evidence from which the trial court could find there was not "a reasonably fair price," the trial court did not err in concluding that the transfers were not voluntary.

The trial court's findings support its conclusions that the conveyances were not fraudulent.

Affirmed.

Judges MARTIN and TYSON concur.