J. V. VANDENBERGE, TRANSFEREE OF TEXAS AUTO COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

D. E. BLACKBURN, TRANSFEREE OF TEXAS AUTO COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. F. WALLACE, TRANSFEREE OF TEXAS AUTO COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

TEXAS AUTO COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1606, 1607, 1608, 1609. Promulgated February 21, 1944.

*J. V. Vandenberge, Jr., Esq.*, for the petitioners.
*Loyal E. Keir, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: These proceedings have been consolidated. The Commissioner has determined deficiencies in income and excess profits taxes against Texas Auto Co. for the taxable years 1938 and 1939 in the following amounts:

| Taxable year | Income tax | Excess profits tax |
|---|---|---|
| 1938 | $175.00 | $50.27 |
| 1939 | 2,622.71 | 2,032.34 |
| Total | 2,797.71 | 2,082.61 |

The Commissioner has also determined that J. V. Vandenberge, D. E. Blackburn, and W. F. Wallace are liable as transferees of Texas Auto Co. and that each is liable for the full amount of the deficiencies determined.

Each of the petitioners assigns the following errors:

1. In computing the tax liability of the transferor corporation, Texas Auto Company, for the year 1938, the Commissioner erroneously declined to allow depreciation on a building owned by the corporation at a reasonable rate and based upon the cost thereof in December, 1922, when acquired, which depreciation was claimed in the amount of $1400.00.

2. In determining the tax liability of the transferor corporation, Texas Auto Company, for the year 1939, in computing the gain realized from the sale in July, 1939, of certain improved real estate owned by the corporation, the Commissioner erroneously held that the cost thereof in December, 1922, when acquired for a lump price, was $20,000.00, with $11,111.11 apportioned to the cost of the building thereon situated and $8,888.89 to the cost of the land, whereas the total cost of said realty was $44,567.16, of which amount at least $25,000.00 represented the cost of the building and the remainder the cost of the land.

As an alternative ground of error, each of the petitioners, Vandenberge, Blackburn, and Wallace, as transferees, assigns the following error:

3. In 1939, subsequent to the above mentioned sale by the corporation, a liquidating dividend was declared in the amount of $19,500.00, of which this petitioner received $6,500.00, and which was duly reported by this petitioner in his individual return for the year 1939 as income for said year and upon which taxes were duly paid, and if the Commissioner's action be correct in the respects hereinabove complained of then such return is erroneous and petitioner is entitled to a proportionate refund or credit on his individual return and tax for said year as against the transferee liability asserted by the Commissioner.

Vandenberge, Blackburn, and Wallace concede that they are liable as transferees for the full amount of the deficiencies in case the Court should sustain the Commissioner in his determination of the deficiencies against Texas Auto Co., but claim the offsets set up in their alternative assignment of error above.

The facts have all been stipulated and we adopt these facts as our findings of fact. For the purpose of this opinion we summarize them as follows:

Texas Auto Co., sometimes hereinafter referred to as the Auto Co., was created in 1917 under the name of Mayfield Auto Co., the name being changed to Texas Auto Co. in 1924.

On December 23, 1922, the Mayfield Auto Co. acquired by deed from J. C. Blacknall Co. certain improved real estate for a recited consideration of $10 "and other valuable consideration," and "subject to all existing indebtedness thereon." At the time of this conveyance, J. C. Blacknall was operating his business under his individual name

and through the medium of three associate companies, including J. C. Blacknall Co., all of which were owned or controlled by him. Clark Pease owned 45 percent of the stock of Mayfield Auto Co., subsequently acquiring the remainder thereof, and likewise owned 315 shares out of 345 shares outstanding of the stock of City National Bank of Corpus Christi, being president thereof. The J. C. Blacknall Co. owed E. J. Hulick a $10,000 note secured by a first lien against the real estate so conveyed, and likewise owed Clark Pease a note for $10,000 secured by a second lien against this realty, both of which notes were subsequently paid by Texas Auto Co., successor to Mayfield Auto Co. The note to Pease was paid December 19, 1925, by the issuance of stock, and the note to Hulick was paid December 10, 1937, in cash. Blacknall and his associate companies, including J. C. Blacknall Co., were also indebted to City National Bank of Corpus Christi, Texas, sometimes hereinafter referred to as the bank, in the amount of $24,567.16, evidenced by six unsecured notes. It was orally agreed between Blacknall and his associate companies, on the one hand, and the bank and Pease, on the other, that, if Blacknall should have the realty in question conveyed to Mayfield Auto Co., he and his associate companies would be released and discharged from any and all direct or indirect liabilities to the bank or Pease, including the six notes above mentioned. On December 30, 1922, a written instrument was executed by Blacknall, J. C. Blacknall Co., the bank, and Pease under which it was agreed that, in the absence of bankruptcy proceedings against Blacknall and his companies, the bank and Pease would release them from all direct or indirect liabilities held by the bank or Pease dated prior to December 15, 1922. In September 1924 the six notes referred to were surrendered to Blacknall without his giving further consideration therefor. On its Federal income tax return for 1922 the bank charged off an indebtedness of approximately $25,000 against Blacknall and his companies, including the six notes referred to, and no subsequent recoveries thereon have been had by the bank.

The real estate so acquired by Mayfield Auto Co. from J. C. Blacknall Co. was set up in the ensuing year for depreciation purposes at $45,000, $20,000 allocated to the land and $25,000 to the improvements. Depreciation on the building was subsequently claimed and allowed for income tax purposes for the years 1923 to 1937, inclusive, for an aggregate of $16,417.30. Depreciation in the amount of $1,400 for the year 1938 was claimed, but disallowed by the respondent. The real estate so conveyed by J. C. Blacknall Co. to Mayfield Auto Co. was sold by Auto Co. in July 1939.

In making determination of the deficiencies in question, the respondent allowed an original cost of only $20,000 represented by the Hulick

and Pease secured notes above referred to which were paid by the Auto Co. after it acquired the property, declining to allow the asserted additional cost of approximately $25,000 represented by the six unsecured notes above referred to which were charged off by the bank in 1922 and deducted from its income tax return. Respondent apportioned the allowed cost of $20,000 in the ratio of 20/45 for the land and 25/45 for the building. In computing gain from the 1939 sale for $36,000, respondent allocated $26,000 for the land and $10,000 for the building, resulting in the determination of a net gain of $27,111.11 or $17,111.11 in excess of that reported by Texas Auto Co. Petitioners do not dispute respondent's computation of the gain if respondent's determination of the basis is sustained.

The claim of petitioners Vandenberge, Blackburn, and Wallace to an offset in the event the deficiencies be sustained is grounded upon the fact that in 1939 Auto Co. paid a liquidating dividend of $19,500 from the sale of said realty, of which each received $6,500. Each of them reported and paid individual income tax for that year with respect thereto in varying brackets. Should the deficiencies be determined against Auto Co., they contend that the dividend upon which their individual taxes were thus paid would be thereby decreased to the extent of the deficiency, plus interest, and that the amount of the tax paid by each with respect to such reported but unrealized income should be allowed as an offset against their joint liability as transferees. On this point it is stipulated:

* * * in the event the court should determine that the petitioners transferees are entitled to offsets as defined in paragraph 12 above, that the amounts of the offsets, excluding interest, shall be as follows:

| | |
|---|---|
| Vandenberge | $359. 94 |
| Blackburn | 174. 48 |
| Wallace | 146. 40 |

The first question which we have to decide is the correct basis of the property which Auto Co. purchased in 1922 from J. C. Blacknall Co. Petitioners claim a basis of $45,000 for this property and have allocated $20,000 to the land and $25,000 to the building. The Commissioner has determined a cost basis of $20,000 and has allocated $8,888.89 to the land and $11,111.11 to the building. If the Commissioner is sustained in his determination of the basis, petitioners do not complain of his allocation of cost between the land and the building. The Commissioner has determined petitioners' cost basis to be $20,000 because that is all that petitioners ever paid for the property. We think his determination must be sustained under the facts which have been stipulated.

The applicable provisions of the Internal Revenue Code are printed in the margin.[1]

Petitioners concede that Auto Co. itself only paid $20,000 for the property in question, but they contend that it is entitled to add to its cost basis $24,567.16, representing the face value of six unsecured notes which J. C. Blacknall and his associate companies owed the City National Bank of Corpus Christi, Texas, at the time Auto Co. purchased the property, which notes the bank agreed to cancel under certain conditions if Blacknall would cause the property to be conveyed to Auto Co.

The principal case which petitioners urge in support of their contention is *Arundel-Brooks Concrete Corporation* v. *Commissioner*, 129 Fed.(2d) 762. In that case the taxpayer erected a plant which cost $40,000. Of this amount the taxpayer paid out of its own funds $20,000, and $20,000 was contributed by the Maryland Slag Co. The Board sustained the Commissioner in his determination of a cost basis to the taxpayer of $20,000. See 45 B. T. A. 178. The Circuit Court reversed the Board and held that the taxpayer in taking depreciation was entitled to a cost basis of $40,000, although it had actually paid out of its own funds only $20,000, the court saying:

\* \* \* And even though part of the money was donated by an interested party, the total cost of the asset, not the net cost to the taxpayer, is the proper basis to be used in determining depreciation as well as gain or loss, if the asset belongs solely to the taxpayer. \* \* \*

Even if we assume that the *Arundel-Brooks* case was correctly decided by the court, it is not applicable to the facts of the instant case. In the first place, no outside party contributed anything in cash toward

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED OF PROPERTY.—The basis of property shall be the cost of such property; \* \* \*

\* \* \* \* \* \* \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

\* \* \* \* \* \* \*

(B) In respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this chapter or prior income tax laws. \* \* \*

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business. \* \* \*

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(a) BASIS FOR DEPRECIATION.—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property.

the purchase by Auto Co. of the property involved here. Clark Pease, who was a stockholder in Auto Co. and also in the bank at the time Blacknall Co. conveyed the property to Auto Co., procured the consent of the bank to cancel six unsecured notes owed by Blacknall and his associate companies to the bank. There is no evidence that petitioner has ever paid anything to the bank in consideration of its cancellation of these notes. Petitioners do not so contend. But they contend that this cancellation of these notes was a contribution by Pease to the capital surplus of petitioner and therefore should be added to its cost basis of the property. But the bank which made the cancellation was not a stockholder of Auto Co. It is true that Pease was a stockholder of Auto Co. and the controlling stockholder of the bank, but it would require a complete disregard of the corporate entity of the bank to hold that Pease, as a stockholder of Auto Co., contributed to its capital surplus by inducing the bank to cancel the six unsecured notes which Blacknall and his associate companies owed the bank. This disregard of corporate entity we are not privileged to make, but even if we were, it would not help petitioner. Even if we were to assume that Pease, as a stockholder of Auto Co., contributed the six notes in question to its capital surplus, there is no evidence that they had any value. The inference is to the contrary. It is stipulated as to these notes that:

> * * * On its Federal income tax return filed by said bank for the taxable year ending December 31, 1922, the said bank charged off notes payable by Blacknall and/or his said companies, totalling $25,140.00, including said amounts of $24,567.16 covered by the notes referred to above, upon which notes there have been no subsequent recoveries by the bank. * * *

Thus it seems clear that the facts in the instant case are distinguishable from those present in *Arundel-Brooks Concrete Corporation* v. *Commissioner*, *supra*, in that in the *Arundel* case the Maryland Slag Co. did actually contribute $20,000 cash toward the erection of the plant, whereas in the instant case we would be unable to hold that either the bank or Pease contributed anything of value toward the purchase price paid by Auto Co. for the property in question. But even if the facts here were not distinguishable from those present in the *Arundel* case, we would still decide the issue as to basis in favor of the Commissioner.

When petitioners filed their brief they conceded that the court in *Detroit Edison Co.* v. *Commissioner*, 131 Fed. (2d) 619, had said that the conclusion therein reached was in conflict with the holding in the *Arundel-Brooks* case. On account of this conflict the Supreme Court granted certiorari in the *Detroit Edison Co.* case, and in *Detroit Edison Co.* v. *Commissioner*, 319 U. S. 98, it affirmed the Sixth Circuit, which had affirmed the Board, 45 B. T. A. 358. Following the

Supreme Court's decision in *Detroit Edison Co.* v. *Commissioner*, *supra*, we sustain the Commissioner in his determination of petitioners' cost basis of the property involved here. In thus deciding, it means that petitioners' assignment of error as to depreciation disallowed of $1,400 in 1938 and their assignment of error as to computation of the profits on the sale in 1939 are not sustained.

Having decided the main issue against petitioners, it becomes necessary to pass upon the alternative contention of petitioners. Vandenberge, Blackburn, and Wallace, which is to the effect that they are entitled to an offset against their liabilities as transferees of overpayments made on their individual income taxes in 1939 which will result from their having to pay the tax liabilities of the transferor for the years 1938 and 1939, involved in these proceedings. If petitioners are entitled to such offsets, the stipulated facts agree how much they shall be. We think petitioners' alternative contention must be denied. We do not have before us for adjudication the individual income tax liabilities for 1939 of Vandenberge, Blackburn, and Wallace. We have no jurisdiction to determine in these proceedings any overpayments of their 1939 individual income tax liabilities which will result from our decision in these proceedings. We have before us only the income tax and excess profits tax liability of the transferor, Texas Auto Co., and the secondary liabilities of Vandenberge, Blackburn, and Wallace, as transferees. Section 53.43, Mertens Law of Federal Income Taxation, vol. 9, says:

Effect of Determination of Other Tax Liability of Transferee. The personal tax liability of an individual is a thing separate and apart from his liability as transferee of the assets of another taxpayer. * * * Stockholders may not, in a transferee proceeding against them, offset any part of the personal taxes already paid by them on reported profits received in the distribution of the corporation's assets, which profits must necessarily be reduced by the recovery allowed the government in the equity suit.

See *United States* v. *Tillinghast*, 55 Fed. (2d) 279; affd., 69 Fed. (2d) 718 (C. C. A., 1st Cir.), on another point. An earlier case by the Second Circuit, *United States* v. *Klausner*, 25 Fed. (2d) 608, is to the contrary of the *Tillinghast* case. The court, however, in the *Klausner* case granted the claimed offset strictly on equitable grounds. That fact is clearly shown from the following quotation from the court's opinion:

This is a suit in equity, and the plaintiff must do equity if it is to get equitable relief. Therefore, while the tax of Crystal Knitting Mills must be calculated as plaintiff contends, the defendants will be entitled to a credit of any overpayment they may have made on their 1919 taxes by reason of reporting $50,000 each as income from a sale of his stock. * * * This will require recalculations for several years, and probably a reference to a master if the parties cannot agree.

We are not a court of equity and have power to exercise only the jurisdiction which Congress has imposed upon us by statute. This much has been decided by the Supreme Court as recently as December 6, 1943. See *Commissioner* v. *Gooch Milling & Elevator Co.*, 320 U. S. 418. In that case the Supreme Court, among other things said:

We are not called upon to determine the scope of equitable recoupment when it is asserted in a suit for refund of taxes in tribunals possessing general equity jurisdiction. Cf. *Bull* v. *United States,* 295 U. S 247: *Stone* v. *White,* 301 U. S. 532. But its use in proceedings before the Board is governed by the circumscribed jurisdiction of that agency. The Internal Revenue Code, not general equitable principles, is the mainspring of the Board's jurisdiction. * * *

As we have already stated, we do not have before us the determination of the individual income tax liabilities of Vandenberge, Blackburn, and Wallace for 1939. Therefore. we have no jurisdiction to require that overpayments which they may have made in their individual income taxes for the year 1939 shall be credited to their liabilities as transferees of Texas Auto Co. The alternative assignment of error is, therefore, not sustained.

*Decisions will be entered for the respondent.*