ANN T. ALONSO, TRANSFEREE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7874–78.     Filed April 12, 1982.

*R. Glenn Snipes*, for the petitioner.
*Mathew E. Bates*, for the respondent.

NIMS, *Judge*: Respondent determined that petitioner was liable as transferee of the assets of her deceased husband for $37,774.79 in unpaid Federal income taxes, additions to tax, and interest for the taxable years 1966 through 1973.

The issue for decision is whether and to what extent

petitioner is liable as a transferee of assets under section 6901[1] as a result of her receipt in 1973 of an interest in certain realty as a tenant by the entirety, which realty was, prior to the transfer, owned by her husband in fee simple absolute.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner Ann T. Alonso resided in Asheville, N. C., at the time of filing the petition herein.

As of April 3, 1973, Rudolph Charles Alonso was liable for income taxes, additions to tax, and interest in the following amounts:

| Taxable year | Tax | Additions to tax | | Assessment date[2] | Interest to 4/3/73 | Total |
| | | Sec. 6653(a) | Sec. 6653(b) | | | |
|---|---|---|---|---|---|---|
| 1966 | $1,805.09 | $592.08 | 0 | 3/8/76 | $646.87 | $3,044.04 |
| 1967 | 1,833.05 | 608.57 | 0 | 5/3/76 | 546.60 | 2,988.22 |
| 1968 | 2,086.05 | 691.08 | 0 | 3/8/76 | 496.88 | 3,274.01 |
| 1969 | 5,138.96 | 0 | $2,733.93 | 3/8/76 | 915.72 | 8,788.61 |
| 1970 | 5,607.19 | 0 | 2,983.03 | 3/8/76 | 662.72 | 9,252.94 |
| 1971 | 5,734.17 | 0 | 3,050.58 | 3/8/76 | 332.74 | 9,117.49 |
| 1972 | 518.00 | 0 | 0 | 3/8/76 | 0 | 518.00 |
| 1973 | 791.48 | 0 | 0 | 3/1/76 | 0 | 791.48 |
| | 23,513.99 | 1,891.73 | 8,767.54 | | 3,601.53 | 37,774.79 |

Prior to April 3, 1973, Rudolph Charles Alonso (Alonso) was the sole owner of four parcels of real property located in the city of Asheville, N.C.

On April 3, 1973, Alonso conveyed those four parcels of real property to a third person. That third person reconveyed those four parcels to Alonso and his wife (petitioner), as tenants by the entirety. Following the transfer, Alonso lacked sufficient individual property to satisfy his individual debts.

As of April 3, 1973, the four parcels of real property referred to above were valued at $58,205 by the Buncombe County, N.C., tax collector's office, which valued each of the parcels, which are described below, at the amount shown:

---

[1]All section references are to the Internal Revenue Code of 1954 in effect during the years in issue, unless otherwise specifically indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure.

[2]While the taxes and additions to tax were assessed after Apr. 3, 1973, the parties have stipulated that Alonso was liable for these amounts as of such date.

| Description of property | Valuation |
|---|---|
| Ward 6, sheet 10, lot 190 ............. | $7,410 |
| Ward 6, sheet 14, lot 66¼ ............. | 635 |
| Ward 6, sheet 14, lot 67 .............. | 39,500 |
| Ward 6, sheet 14, lot 68 .............. | 10,660 |

Those valuations were based on revaluations of all of the property in Buncombe County, N.C., which revaluations were performed during 1972. Under North Carolina law, real property is to be valued at its fair market value for tax purposes. North Carolina Gen. Stat. sec. 105–283 (Michie 1979).

As of April 3, 1973, Alonso was liable to Buncombe County for substantial amounts of unpaid property taxes on the four parcels of land.

During 1958, while petitioner's husband was away from home for a year, petitioner, out of her own funds, paid 12 monthly payments of $364 each in reduction of a mortgage on one of the properties.

Between 1956 and 1960, petitioner worked in her husband's grocery store and meat market, but received no pay for such services.

Alonso died on June 28, 1975. As surviving tenant by the entirety, petitioner became the sole owner of the four parcels of land.

On June 18, 1976, petitioner filed an inheritance and estate tax return for the Estate of Rudolph Charles Alonso with the North Carolina Department of Revenue. On that return, petitioner listed the value of the four parcels of real estate, as of June 28, 1975, as $68,000.

Subsequent to her husband's death, petitioner paid Buncombe County $8,812 in partial satisfaction of Alonso's liability for property taxes accrued on the four parcels prior to June 28, 1975.

The fair market value of the four parcels of real property on April 3, 1973, was $63,000.

Respondent asserts that as a recipient of the real property in tenancy by the entirety on April 3, 1973, petitioner is liable for unpaid income taxes, additions to tax, and interest owed by Alonso on that date in the aforesaid amount of $37,774.79.

OPINION

The issue for decision is whether and to what extent petitioner is liable as a transferee for income taxes, additions to tax, and interest owed by her former husband.

Respondent has the burden of proving that petitioner is liable as a transferee of the property of her former husband, Rudolph Charles Alonso. Sec. 6902(a); Rule 142(d). In order to meet this burden, respondent must prove the following elements: (1) A transfer of property to the petitioner, (2) the transfer was made for inadequate consideration, (3) the transferor was insolvent at the time of the transfer or became insolvent as a result of the transfer, (4) the value of the property transferred, and (5) the transferor has not paid the tax asserted. *Moran v. Commissioner*, 45 T.C. 528 (1966). It is the petitioner's burden to prove that the transferor was not liable for the taxes asserted. Sec. 6902(a); Rule 142(d).

In the instant case, petitioner does not dispute the fact that her husband owed the taxes, additions to tax, and interest asserted on April 3, 1973, or that those amounts have not as yet been paid. Petitioner does, however, argue that she is not a transferee within the meaning of section 6901 for any of three reasons: (1) Property received by way of tenancy by the entirety is not subject to transferee liability, (2) her husband was not made insolvent by the creation of the tenancy by the entirety, and (3) the creation of the tenancy by the entirety was for fair and adequate consideration. We will examine each of petitioner's arguments in turn.

Petitioner first argues that as a tenant by the entirety prior to assessment, she is not liable as a transferee, citing Rev. Rul. 78–299, 1978–2 C.B. 304, and *United States v. Rewis*, an unreported case (S.D. Fla. 1962, 9 AFTR 2d 953, 62–1 USTC par. 9301).

In Rev. Rul. 78–299, the Internal Revenue Service held that jointly owned assets passing directly to a decedent's spouse and not subject to claims of decedent's creditors under State law were not subject to transferee liability under section 6901. This revenue ruling is, as we see it, merely a restatement of the holdings of such cases as *Tooley v. Commissioner*, 121 F.2d 350 (9th Cir. 1941), revg. *Estate of Botts v. Commissioner*, 42 B.T.A. 977 (1940); *Irvine v. Helvering*, 99 F.2d 265 (8th Cir. 1938), revg. 36 B.T.A. 653 (1937); and *Smith v. Commissioner*,

24 B.T.A. 807 (1931). See also *Commissioner v. Stern*, 357 U.S. 39 (1958). In *Smith v. Commissioner, supra*, the Board of Tax Appeals held that when real property is held in tenancy by the entirety and passes to one spouse on the death of the other, the surviving spouse is not liable as a transferee of the decedent spouse's property because a creditor of the decedent spouse, as a matter of State law, could not have levied on the property so held either during the tenancy or after the decedent spouse's death.

Petitioner's situation is, however, distinguishable from that of the taxpayer in *Smith*. In the instant case, respondent is not asserting that the passage of the property to petitioner on her husband's death produced transferee liability, but, rather, that the creation of the tenancy by the entirety on April 3, 1973, out of land held in fee by her husband gave rise to the liability. Respondent argues that by creating the tenancy by the entirety in the four parcels of real estate, petitioner's husband placed the property beyond the reach of his individual creditors, leaving him insolvent. Such conduct, argues respondent, constitutes a fraud on creditors under North Carolina law and thus makes the creation of the tenancy void.

Neither Rev. Rul. 78–299, *supra*, nor *Smith* addresses such an argument. On the other hand, *Irvine v. Helvering*, 99 F.2d at 268–269, and *Commissioner v. Stern, supra* at 45–46, imply that if a transferor creates an interest beyond the reach of his creditors and the creation of that interest constitutes a fraud on creditors, the fund of property transferred by the transferor is subject to transferee liability in the hands of the ultimate recipients of that fund—even though the fund passed to the ultimate recipients by way of subsequent transfers not ordinarily subject to creditors' claims (joint tenancy in the case of *Irvine* and insurance proceeds in the case of *Stern*). See also *United States v. Bess*, 357 U.S. 51 (1958).

Consequently, we hold that if there is proof that the creation of a tenancy by the entirety between Alonso and petitioner on April 3, 1973, rendered Alonso insolvent, thus constituting fraud on his creditors and, therefore, void under North Carolina law, petitioner may be held liable as transferee in the amount of the full fair market value of the property transferred less the value of payment by petitioner in consideration for such transfer.

We recognize that *United States v. Rewis, supra,* cited by petitioners, is in apparent conflict with our holding herein. In *Rewis,* a husband and wife held a number of properties as tenants by the entirety prior to July 2, 1949. On July 2, 1949, the husband transferred a parcel of real estate he held in fee to himself and his wife as tenants by the entirety. The Government argued that the husband owed income taxes from the taxable years 1945 and 1946 and that the creation of the tenancy by the entirety in 1949 placed the entire value of the transferred parcel beyond the reach of the Government, leaving the husband insolvent. The Government contended that the wife was liable as a transferee for the full value of the real estate transferred on July 2, 1949, and one-half the value of the real estate held prior to that date as tenants by the entirety. Without citing any authority, the Court ruled in an oral opinion that none of the land held in tenancy by the entirety could be subject to transferee liabilities because of the nature of the estate.

The *Rewis* court did not distinguish between the tenancies created prior to July 2, 1949, which admittedly did not render the husband insolvent on creation, and the tenancy created on July 2, 1949. Nor did the court find as a fact that the creation of the tenancy by the entirety on July 2, 1949, rendered the husband insolvent. Consequently, *Rewis* may be interpreted as holding that when a tenancy by the entirety is created which does not render the transferor insolvent, no transferee liability results. See *Smith v. Commissioner, supra.* To the extent *Rewis* implies that the creation of a tenancy by the entirety can never result in transferee liability, however, we respectfully disagree. See *Irvine v. Helvering,* 99 F.2d at 268–269; *Commissioner v. Stern, supra* at 45–46.

The next question we must answer is: Did the creation of the tenancy by the entirety in the instant case render petitioner's transferor insolvent as a matter of State law? We hold that it did.

Under North Carolina law, when a husband voluntarily conveys his property to himself and his wife as tenants by the entirety and fails to retain other property sufficient and available to satisfy his existing creditors, the tenancy by the entirety is void as to the husband's creditors. *Nytco Leasing, Inc. v. Southeastern Motels, Inc.,* 40 N.C. App. 120, 252 S.E.2d

826 (1979); *Finch v. Cecil*, 170 N.C. 114, 86 S.E. 991 (1915). Petitioner has stipulated that after the creation of the tenancy by the entirety, her husband "lacked sufficient individual property to satisfy his individual debts." This stipulation has provided all the necessary evidence to find that petitioner's husband was rendered insolvent by the transfer on April 3, 1973.

We have found as a fact that the fair market value of the parcels transferred was $63,000 on April 3, 1973. The only remaining question, therefore, is the amount of consideration, if any, paid by petitioner for such transferred assets. All other elements of transferee liability having been shown prima facie by respondent, the burden of going forward now shifts to petitioner to establish the amount of consideration, if any, she paid for the land. *Hutton v. Commissioner*, 59 F.2d 66, 69 (9th Cir. 1932), affg. 21 B.T.A. 101 (1930); *Gobins v. Commissioner*, 18 T.C. 1159 (1952), affd. per curiam 217 F.2d 952 (9th Cir. 1954). In the instant case, petitioner must show that she paid more than $25,225.21 for the land ($63,000.00-$37,774.79) before she may be relieved of any of the transferee liability asserted against her by respondent.

Petitioner has failed to establish that she paid consideration in excess of $25,225.21 for the land.

First, petitioner has failed to show any stated consideration for the creation of the tenancy by the entirety. No contemporaneous document, such as the deed or a contract to convey, has been submitted in evidence.

Second, even assuming that the transfer was in exchange for certain consideration, petitioner has not shown that the amount she claims to have paid was in excess of $25,225.21. Petitioner claims that the following items constitute consideration paid by her for the transfer of the land: (1) The value of her unpaid services rendered in her husband's store between 1956 and 1960, (2) $364 per month paid by her in 1958 in reduction of an outstanding mortgage on one of the parcels, (3) $8,812 paid to Buncombe County after 1975 in partial satisfaction of her husband's liability for property taxes accrued on the four parcels prior to June 28, 1975, and (4) her rights under North Carolina law to elect a life estate in one-third of the property of which her husband was seized during coverture.

In regard to the value of her unpaid services from 1956 to

1960, petitioner has made no estimate. Nor has she presented this Court with sufficient information from which we could draw our own estimate. Consequently, we can ascribe no value to this alleged consideration. Cf. *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930).

In regard to the payment of $8,812 in back property taxes, such payments cannot constitute consideration paid for the transfer as a matter of law. Petitioner has failed to show that any local tax obligations she satisfied after her husband's death were anything more than general liens on the properties at the time of the transfer. A tax lien of a town which is only general—i.e., has not been perfected by reducing the property to possession or ousting the taxpayer's title—is subordinate to a general tax lien of the United States under Rev. Stat. sec. 3466, 31 U.S.C. sec. 191 (1976).[3] *United States v. Gilbert Associates, Inc.*, 345 U.S. 361 (1953). By paying such a subordinate lien, petitioner cannot reduce her Federal transferee liability. *Gobins v. Commissioner*, 18 T.C. at 1174.

We need not find whether the remaining alleged consideration—the mortgage payments and the statutory elective share—was in fact consideration paid by petitioner for her interest in the land because even under the most favorable assumptions, the value of this "consideration" did not exceed $25,225.21. The payments of $364 for 12 months yield a total figure of $4,368 paid on the mortgage. After subtracting this $4,368 figure from $25,225.21, there remains $20,857.21 of alleged consideration which petitioner must have contributed to even begin to reduce her transferee liability.

Under North Carolina Gen. Stat. sec. 29–30 (Michie 1976), a surviving spouse may elect to take a life estate in one-third of

---

[3]Rev. Stat. sec. 3466, 31 U.S.C. sec. 191 (1976), provides:

Sec. 191. Priority established

Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.

the value of all real estate of which the deceased spouse was seized during coverture.[4] We have found as a fact that the value of the real estate transferred by petitioner's husband was $63,000 on April 3, 1973. One-third of the value of the real estate at the time of the transfer was thus $21,000. We think it clear that the value of a potential life estate in $21,000 could not exceed $20,857.21.

Consequently, even if petitioner did give as consideration the mortgage payments and the elective life estate in exchange for the creation of the tenancies by the entirety, she still received, without consideration, property from the transferor in excess of the $37,774.79 of asserted transferee liability. Under such circumstances, petitioner is liable for the full amount of the asserted transferee liability.

*Decision will be entered for the respondent.*

---

[4]Common law dower has been abolished in North Carolina. N.C. Gen. Stat. sec. 29–4 (Michie 1976).