LOIS W. POINIER, AS TRANSFEREE OF HELEN WODELL HALBACH, ET. AL.,[1] PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 23881-81,      Filed March 27, 1986.
23882-81,
23883-81.

---

[1]Cases of the following petitioners are consolidated herewith: W. Page Wodell, as Transferee of Helen Wodell Halbach, docket No. 23882-81; and Estate of Helen Wodell Halbach, Deceased, John Poinier, Executor, docket No. 23883-81.

*Geoffrey J. O'Connor*, for the petitioners.
*Leslie J. Spiegel*, for the respondent.

TANNENWALD, *Judge*: Respondent determined the following deficiencies/liabilities in petitioners' Federal gift taxes:

| Docket No. | Year | Deficiencies/liabilities |
|------------|------|--------------------------|
| 23881-81   | 1970 | $5,172,500.92            |
| 23882-81   | 1970 | 5,172,500.92             |
| 23883-81   | 1970 | 5,172,500.92             |

The issues for decision are: (1) Whether the disclaimer and renunciation made by decedent in 1970, of a remainder interest in the testamentary trust created by her father's will in 1937, constituted a taxable transfer under section 2511;[2] (2) in the event we find that a taxable transfer did take place, whether decedent's children who took by default under the terms of the trust because of decedent's dis-

---

[2]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, and all Rule references are to the Rules of Practice and Procedure of this Court.

claimer, are each liable as a donee-transferee of the assets of decedent under section 6324(b), for the deficiency in gift tax due from her for the calendar year 1970; (3) in the event we find such liability does exist, whether the total liability of each donee-transferee, including interest under section 6601 on the underlying deficiency for the period subsequent to the issuance of their respective notices of liability, is limited to the value of the assets transferred to each, pursuant to section 6324(b); and (4) in the event that we find liability does exist, (a) whether this Court has jurisdiction to offset the gift tax deficiency determined against decedent's estate, and in turn the transferee liability of the donee-transferees, by estate tax refunds claimed to be due by the estate, (b) whether this Court has jurisdiction to offset the transferee liability of the donee-transferees by individual income tax refunds claimed to be due by them, and (c) whether this Court has jurisdiction to take into account in entering its decisions herein certain prepayments made to respondent after the commencement of these proceedings.

## FINDINGS OF FACTS

These cases were submitted fully stipulated under Rule 122. This reference incorporates herein the stipulation of facts and attached exhibits.

Petitioner in docket No. 23883-81 is John Poinier, as executor of the Will of Helen Wodell Halbach (formerly Helen Page Wodell), deceased (the decedent). Mr. Poinier resided in Gladstone, New Jersey, at the time he filed his petition in this case. Petitioners in docket Nos. 23881-81 and 23882-81 are Lois W. Poinier and W. Page Wodell, respectively, as donee-transferees of the decedent.[3] At the time they filed their petitions in this case, Mrs. Poinier resided in Gladstone, New Jersey, and Mr. Wodell resided in Lyme, Connecticut.

Decedent was born on August 29, 1890, to Parker Webster Page and Nellie A. Page. Decedent's father died January 22, 1937, domiciled in Essex County, New Jersey. His will was admitted to probate on February 10, 1937, by the Surrogate's Court of Essex County. Article 3 of that will provided in relevant part:

---

[3] Pursuant to Rule 141(a), these cases were consolidated for trial, briefing, and opinion on Jan. 24, 1984.

If my wife, Nellie A. Page, survives me, I give, devise, bequeath and appoint all of said residue of my estate to my Trustees, hereinafter named, IN TRUST, to hold the same during the life of my wife Nellie A. Page and to invest and reinvest the principal and to apply the net income to her use. Upon her death I give, devise, bequeath and appoint the principal in equal shares to my daughters Helen Page Wodell and Lois Page Cottrell and if either of my daughters should then be dead to such persons and in such proportions as such daughter may by will duly admitted to probate legally appoint and in default of such appointment to such daughter's issue then surviving in equal shares per stirpes.

The trust was subject to, governed by, and interpreted pursuant to the laws of the State of New Jersey.

Nellie A. Page died on April 14, 1970, at the age of 100. She was survived by her two daughters, decedent, age 79, and Lois Page Cottrell, age 74, and by decedent's two surviving children, Lois W. Poinier and W. Page Wodell, petitioners in docket Nos. 23881-81 and 23882-81, respectively. Upon the death of Nellie A. Page, the trust terminated and decedent and her sister, Lois Page Cottrell, each became entitled to possession of half the remainder of the trust corpus.

On April 19, 1970, the decedent, being legally competent in all respects, executed (her signature being acknowledged before Coleman Burke, an attorney-at-law of the State of New Jersey) a document entitled "Disclaimer and Renunciation" (the disclaimer), which provided:

I, HELEN PAGE HALBACH (formerly Helen Page Wodell), residing at 49 Forest Drive, Short Hills, New Jersey, do hereby irrevocably disclaim and renounce all my right, title and interest as a remainderman of the trust established by my father, Parker Webster Page, in Paragraph THIRD of his Last Will and Testament, dated January 12, 1935, and admitted to probate by the Essex County Surrogate's Court on February 10, 1937.

As a result of the disclaimer, W. Page Wodell and Lois W. Poinier each became entitled to receive half of the assets comprising decedent's remainder interest in the trust. The fair market value on April 19, 1970, of the remainder interest disclaimed by decedent was $10,450,623.41.[4] In the

---

[4]In the respective notices of deficiency and transferee liability, respondent determined the fair market value of the gift to be $10,954,717.60, the fair market value of the assets in question on Apr. 14, 1970, the date of death of Nellie A. Page. The revised figure reflects respondent's concession that the proper valuation date was Apr. 19, 1970, the date of the

event that we find that decedent's disclaimer constituted a transfer subject to Federal gift tax, the fair market value of the assets transferred to Lois W. Poinier on April 19, 1970, was $5,225,311.71, and the fair market value of the assets transferred to W. Page Wodell on that date was also $5,225,311.71. On April 30, 1970, Lois Page Cottrell also executed a "Disclaimer and Renunciation," similar to the document executed by decedent.

On May 4, 1970, decedent's disclaimer and the "Disclaimer and Renunciation" of Lois Page Cottrell were delivered to the Summit and Elizabeth Trust Co., as co-trustee,[5] and were filed in the Surrogate's Court of Essex County on June 15, 1970. In an action brought by the trustees for settlement of their account and for a determination of the validity and effect of decedent's disclaimer and the "Disclaimer and Renunciation" of Lois Page Cottrell, the Superior Court of New Jersey held that the disclaimer was timely executed and filed, and was valid and effective under New Jersey Law. *In re Estate of Page*, 113 N.J. Super. 582, 274 A.2d 614 (Ch. Div. 1970). The decision was not appealed and became final and binding on the parties thereto. In its judgment dated December 23, 1970, settling the trustees' account in the above action, the Superior Court of New Jersey directed distribution of the remainder interest disclaimed by decedent to W. Page Wodell and Lois W. Poinier, and directed distribution of the remainder interest disclaimed by Lois Page Cottrell to her three children.

On April 14, 1971, decedent timely filed a Federal gift tax return, Form 709, for the calendar year 1970. Decedent did not include the value of the disclaimed remainder interest as a gift to her daughters on this return. Decedent died on August 5, 1972. Petitioner John Poinier timely filed a Federal estate tax return, Form 706, for decedent's estate

disclaimer and alleged transfer, as well as the parties' agreement on other valuation issues raised by petitioners.

[5] Article 10 of the Will of Parker Webster Page appointed Nellie A. Page, decedent, and Lois Page Cottrell as trustees of the trust created thereby. Nellie A. Page subsequently renounced her right to so act. From the closing date of the account of decedent and Lois Page Cottrell as executrices of the Will of Parker Webster Page on Jan. 27, 1945, until Dec. 16, 1965, decedent and Lois Page Cottrell acted as sole trustees of the testamentary trust. On Dec. 16, 1965, they appointed Summit and Elizabeth Trust Co. as co-trustee, and all three acted as trustees from that date until termination of the trust.

on May 3, 1973, with the Office of the District Director, Internal Revenue Service, Newark, New Jersey. On that return, decedent's disclaimer was disclosed, but the gross estate did not include the value of the disclaimed remainder interest. Petitioner John Poinier, however, did pay to the Internal Revenue Service the total sum of $320,066.89, the tax shown to be due on the return.

By notice of deficiency, dated April 30, 1976, respondent determined that decedent's disclaimer constituted a transfer made in contemplation of death under section 2035, as in effect on the date of decedent's death. This Court determined that the disclaimer constituted a "transfer" within the meaning of that term as used in section 2035, *Estate of Halbach v. Commissioner*, 71 T.C. 141 (1978) (docket No. 7099-76), but that such transfer was not made in contemplation of death. *Estate of Halbach v. Commissioner*, T.C. Memo. 1980-309 (docket No. 7099-76). Pursuant to a joint motion by the parties and an order of this Court, no final decision has been entered in that case, pending the outcome of these cases.

## OPINION

The central issue for decision is whether decedent's disclaimer constituted a taxable transfer under section 2511. Section 2501(a)(1) provides that "A tax * * * is hereby imposed for each calendar year on the transfer of property by gift during such calendar year by any individual, resident or nonresident." Section 2511(a), in defining the scope of what constitutes such a transfer, is broad and provides, in relevant part, that "Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is *direct or indirect*." (Emphasis added.)

To determine whether a disclaimer qualifies as an indirect gift,[6] we turn to section 25.2511-1(c), Gift Tax Regs., which provides that:

Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and

---

[6]Sec. 2009(b)(1) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1893, added sec. 2518 which sets forth the requirements necessary for a disclaimer not to constitute a taxable transfer. The provision only applies to disclaimers made after Dec. 31, 1976.

unqualifiedly refuse to accept ownership of property transferred from a decedent (whether the transfer is effected by the decedent's will or by the law of descent and distribution of intestate property), *a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocable and effective under the local law.* There can be no refusal of ownership of property after its acceptance. * * * In the absence of facts to the contrary, if a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property. * * * [Emphasis added.]

There is no question that decedent's disclaimer was unequivocable in nature and effective under New Jersey State law. Thus, our inquiry focuses solely on whether the disclaimer was made "within a reasonable time after knowledge of the existence of the transfer." To this end, petitioners asks us to find that the transfer took place upon the death of the life tenant (Nellie A. Page), when the remainder interest first became possessory in nature, and that the disclaimer, made only 5 days later, was therefore made within a reasonable period of time. Respondent, on the other hand, asks us to hold that the transfer took place when the remainder interest was first created upon the death of Parker Webster Page in 1937, some 33 years before the disclaimer was made, and was therefore not made within a reasonable period of time. For the reasons set out below, we agree with respondent.

In essence, petitioners urge us to revisit *Jewett v. Commissioner*, 455 U.S. 305 (1982), wherein the Supreme Court upheld respondent's position herein by holding, on practically identical facts, that the "reasonable time" period contained in the regulations is to be measured from the time a remainder interest is created and not from the time it becomes possessory. Petitioners ask us to distinguish *Jewett* on two grounds. First, petitioners point to the fact that before *Jewett* was decided by the Supreme Court, decedent's sister, Lois Page Cottrell, was successful in having her disclaimer, executed at approximately the same time as that of decedent, declared timely by a decision of the Eighth Circuit Court of Appeals in *Cottrell v. Commissioner*, 628 F.2d 1127 (8th Cir. 1980), revg. 72 T.C. 489 (1979) (which decision became final before *Jewett* was

decided), and thus escaped any gift tax liability. While we can understand the frustration of decedent's children—frustration which we are satisfied decedent would share if she were alive—at the fact that another branch of the family takes its share of the trust free of gift tax liability, we are unable to assuage that frustration by a favorable decision herein. A prior Circuit Court of Appeals decision contrary to a Supreme Court's decision is of no avail to a taxpayer even where he can prove reliance (which obviously is not present herein). *C. Blake McDowell, Inc. v. Commissioner*, 71 T.C. 71 (1978), affd. 652 F.2d 606 (6th Cir. 1980), and cases therein discussed. The fact that the other taxpayer was decedent's sister and that both disclaimers affected interests in the same trust is simply irrelevant. Second, petitioners argue that the Supreme Court was in error when it stated that "The Commissioner's interpretation of the Regulation has been consistent ,over the years and is entitled to respect." *Jewett v. Commissioner, supra* at 318. To support their view that this statement was incorrect, and thus the Supreme Court's underlying rationale was faulty, petitioners submitted for our review Private Letter Ruling 6612201590A, dated December 20, 1966, to persuade us that respondent has not consistently applied the regulation over the years. Petitioners are grasping at straws. We are satisfied that even if the Supreme Court had been aware of this private ruling to another taxpayer, it would not have been persuaded to reach a different conclusion in *Jewett*.

In sum, we hold that since it is conceded that decedent had knowledge of the creation of the remainder interest in her favor at the time of the death of Parker Webster Page in 1937, the disclaimer was untimely and the transfer thereby accomplished was subject to gift tax.[7]

We now turn to the issue of the liability of petitioners Lois W. Poinier and W. Page Wodell, children of decedent, as donee-transferees of the trust assets, for the deficiency in

---

[7]See also *Kennedy v. Commissioner*, T.C. Memo. 1986-3. In view of this holding, we need not address respondent's alternative contention that a loan of $6,000 made by the trustees to decedent on Feb. 10, 1958, and later forgiven by decedent's children as a gift to her, evidenced an actual acceptance of the transfer prior to the disclaimer which would invalidate the disclaimer under sec. 25.2511-1(c), Gift Tax Regs., because "There can be no refusal of ownership of property after its acceptance."

gift tax due from decedent's estate for the calendar year 1970.

Section 6324(b) provides, in relevant part, that:

unless the gift tax imposed by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, *the donee of any gift shall be personally liable for such tax to the extent of the value of such gift.* * * * [Emphasis added.]

Section 6901(a) provides, in relevant part, as follows:

SEC. 6901(a). METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) INCOME, ESTATE, AND GIFT TAXES.—

(A) TRANSFEREES.—The liability, at law or in equity, of a transferee of property—

\* \* \* \* \* \* \*

(iii) of a donor in the case of a tax imposed by chapter 12 (relating to gift taxes),

Petitioners seek to impose the same standard with respect to their liability as transferees for any gift tax as exists in respect of transferee liability for income taxes under section 6901. That standard is based upon the proposition that section 6901 "neither creates nor defines a substantive liability but provides merely a new procedure by which the Government can collect taxes." *Commissioner v. Stern*, 357 U.S. 39, 42 (1958). The nature and extent of that liability is a question of State law (*Commissioner v. Stern, supra* at 45) and the burden is on the respondent (sec. 6902(a)) to show: (1) A transfer of property to the transferee; (2) the transfer was made for inadequate consideration; (3) the transferor was insolvent at the time, or as a result of the transfer; (4) the value of the property transferred; and (5) the tax found to be owed by the transferor has not been paid. *Alonso v. Commissioner*, 78 T.C. 577, 580 (1982).

The difficulty with petitioners' position is that it ignores the direct liability imposed upon a donee by section 6324(b). Thus, the liability of petitioners herein is predicated upon Federal, not State, law and the solvency of the transferor is

irrelevant.[8] *Mississippi Valley Trust Co. v. Commissioner*, 147 F.2d 186, 187-188 (8th Cir. 1945), affg. a Memorandum Opinion of this Court; *Baur v. Commissioner*, 145 F.2d 338, 340 (3d Cir. 1944), affg. 2 T.C. 1016 (1943). Cf. *Commissioner v. Stern, supra* at 43 n. 3; *Schuster v. Commissioner*, 312 F.2d 311, 314-316 (9th Cir. 1962), affg. on this issue 32 T.C. 998 (1959).[9] As to the other elements required to impose direct liability on petitioners under section 6324(b), there is no doubt that petitioners Lois W. Poinier and W. Page Wodell did in fact receive their equal shares of the trust assets disclaimed by decedent without consideration, and therefore, in light of our finding that the execution of the disclaimer effected a taxable transfer, it is clear that these petitioners were donees and accordingly transferees under section 6901(b). Thus, upon decedent's failure to pay the gift tax due on these transfers, these petitioners each became liable for such tax, to the extent of the value of the gift received by them, under section 6324(b). Respondent, in turn, is empowered to assess and collect this tax pursuant to section 6901(a).[10]

We now turn to what the extent of this liability is with respect to petitioners Lois W. Poinier and W. Page Wodell (hereinafter referred to as "petitioner-donee-transferees"). Section 6324(b) provides that "If the tax is not paid when due, the donee of any gift *shall be personally liable for such*

[8]Similarly irrelevant is any consideration of an offset of the value of the transferor's retained assets at the time of transfer. See *Scott v. Commissioner*, 70 T.C. 71, 85 (1978).

[9]In their reply briefs, petitioners Lois W. Poinier and W. Page Wodell argue that we lack jurisdiction with respect to the donee liability issue because respondent failed to assert such liability in petitioners' notices of transferee liability. We find petitioners' claim to be without merit. In each of the notices, respondent specifically stated that each petitioner's alleged liability arose because "The gift tax liability for the calendar year ended December 31, 1970 has not been discharged by the donor." We think such language, read within the context of each notice, clearly communicated to each petitioner that respondent was asserting donee liability. *Bos Lines Inc. v. Commissioner*, 354 F.2d 830, 834-835 (8th Cir. 1965), affg. a Memorandum Opinion of this Court; *Estate of Mandels v. Commissioner*, 64 T.C. 61, 75-77 (1975). Moreover, we note that petitioners' claim that respondent only asserted "transferee liability" and not "donee liability" shows an improper understanding by petitioners of sec. 6901, because as we have just explained, sec. 6901 only creates a summary procedure by which respondent can collect the gift tax liability that arises under sec. 6324(b). Sec. 6901 creates neither a new source of substantive liability nor an independent basis for jurisdiction.

[10]In their replies, petitioners Lois W. Poinier and W. Page Wodell claimed they were not personally liable within the meaning of sec. 6324(b) because the 10-year lien imposed by that subsection had expired. However, this "liability is personal and exist[s] irrespective of any lien." *Moore v. Commissioner*, 146 F.2d 824, 826 (2d Cir. 1945), affg. 1 T.C. 14 (1942). Therefore, although it is true that the trust assets were no longer subject to the lien when the notices of liability were issued, petitioners' personal liability, and thus respondent's ability to assess and collect the tax due under sec. 6901, continued to exist.

*tax to the extent of the value of such gift.*" (Emphasis added.) Under section 6601(e) "Any reference in this title * * * to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." Thus, while section 6324(b) imposes a maximum ceiling on a donee's tax liability which is not to exceed the fair market value of the gift, the "tax" which is subject to this ceiling on liability includes not only the amount of tax that "is not paid on or before the last date prescribed for payment, [but also] interest on such amount at an annual rate established under section 6621 [which] shall be paid for the period from such last date to the date paid." Sec. 6601(a). Petitioner-donee-transferees assert that the interaction of these two sections operate to limit their total tax liability, including all accrued interest, to the fair market value of the trust's assets received by them. Respondent, however, asks us to apply the statutorily imposed limit on liability only to the underlying deficiency and the interest that accrued thereon from the last date prescribed for payment (April 15, 1971) until the date the notices of transferee liability were issued (June 25, 1981).[11] With respect to the interest that has accrued since these notices were issued, however, respondent asks us to treat such interest as if it is an independent liability that falls outside the liability limitation of section 6324(b).

At the time that the transferee provisions were originally enacted, the Senate proposed that a transferee's liability for a transferor's taxes plus interest and additions to tax should not in turn be subject to interest except in cases where the transferee filed a petition with the Board of Tax Appeals and was unsuccessful on such appeal. In such event, he would have been liable for interest "at the rate of 1 percent a month commencing with notice and demand for payment following the final decision of the Board." S. Rept. 52, 69th Cong., lst Sess. 30 (1926), 1939-1 C.B. (Part 2) 332, 355. Thus, the net result of the proposed amendment would have meant that the only post-transfer interest a transferee

---

[11]Such being the case, we have no need to delve into the intricacies of the possible liability of the petitioner-donee-transferees for an additional amount under State law for the use of money beyond the value limitation contained in sec. 6324(b). See *Patterson v. Sims*, 281 F.2d 577 (5th Cir. 1960); *Mysse v. Commissioner*, 57 T.C. 680, 703 (1972); *Estate of Stein v. Commissioner*, 37 T.C. 945, 959-962 (1962).

would have been liable for would have been *post-judgment* interest. That proposal was modified in conference. The Conference Committee report stated (H. Rept. 356, 69th Cong., 1st Sess. 44 (1926), 1939-1 C.B. (Part 2) 361, 372):

Under the amendment the liability of the taxpayer for the tax, including all interest and penalties, is fixed as of the time of the transfer of the assets. No further interest subsequently accrues upon such liability as assumed by the transferee, except the interest under section 276(b) and (c) for failure to pay upon notice and demand after the outlined procedure has been completed and *interest at 6 per cent a year for reimbursing the Government at the usual rate for loss of the use of the money due it.* [Emphasis added.]

Moreover, the same report made it clear that a notice of transferee liability was to be considered as a notice of deficiency which in turn was to constitute the "notice and demand."

The rationale behind this is obvious. Congress' primary purpose in enacting the transferee enforcement provisions was to create a summary procedure by which respondent could enforce a transferee's liability "in the same manner as liability for a tax deficiency is enforced; that is, notice by the Commissioner to the transferee and opportunity to pay and sue for a refund or else to proceed before the Board of Tax Appeals, with review by the courts." H. Rept. 356, *supra* at 371. If a transferee pays the amount asserted in the notice of liability and then successsfully sues for a refund, the refund procedures apply and it would appear that the transferee would be entitled to interest under section 6611 to compensate him for the loss of the use of his money. See *Hodges v. United States*, 423 F. Supp. 754, 759 (E.D. La. 1976), affd. 597 F.2d 1014 (5th Cir. 1979); *Campbell Farming Corp. v. United States*, 132 Ct. Cl. 341, 132 F. Supp. 216 (1955). If the transferee chooses to petition this Court and ultimately is found liable, the Government should similarly be compensated for "the loss of the use of the money due it" as in the case of any taxpayer who contests a deficiency without prepayment. This implements the purpose of the change effectuated by the Conference Committee in 1926 and is the foundation of the sparse judicial authority which indicates that a transferee is liable for interest from and after issuance of the

notice of transferee liability at the rate specified in the Internal Revenue Code. *Patterson v. Sims*, 281 F.2d 577, 580-581 (5th Cir. 1960); *Estate of Stein v. Commissioner*, 37 T.C. 945, 959-960 (1962). We hold that respondent is entitled to interest at such rate from June 25, 1981.

We now turn to petitioners' requests that this Court offset any gift tax deficiency and transferee liabilities, which we determine, by refunds claimed due by the estate and petitioner-donee-transferees for previously paid estate and income taxes, respectively. Specifically, petitioners argue that any gift tax for which the decedent's estate is liable will be deductible as a claim against the estate under section 2053, thus eliminating decedent's taxable estate and entitling the estate to a refund of the estate taxes already paid in 1973. Additionally, petitioner-donee-transferees argue that they are entitled to income tax refunds for individual Federal income taxes they paid in earlier years on the sale of assets disclaimed by the decedent, particularly I.B.M. common stock. They contend that under section 1015(d)(1)(A) and section 1.1015-5, Income Tax Regs., the basis of these assets will be increased by the amount of gift tax to be paid with respect to the transfer of such assets and therefore their reported gain on the sale of such assets will be reduced. They ask us to offset these refunds of income tax against their transferee liabilities. For the reasons set out below, we cannot honor petitioners' requests.

With respect to any deduction for the gift tax deficiency which we have determined, we believe this should be disposed of in the course of entering a decision in the estate tax proceedings presently pending before the Court in docket No. 7099-76 (*supra*, p. 483), including the disposition of any overpayment for which a claim is made therein.

With respect to the offsets of refunds of income taxes against petitioners' transferee liabilities, we are without jurisdiction to do so. Section 6214(b) provides that:

The Tax Court in redetermining a deficiency of income tax for any taxable year or of a gift tax for any calendar year or calendar quarter shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, *but in doing so shall have no jurisdiction to*

*determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.* [Emphasis added.]

Since respondent determined the deficiency in gift tax for the calendar year ended December 31, 1970, and because the claimed overpayments were all made with respect to taxes paid for calendar years other than 1970, section 6214(b) makes it clear that we are without jurisdiction to effectuate such offsets.[12] Our lack of jurisdiction to offset individual tax liabilities of the transferees against their transferee liabilities has also been judicially established. *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418 (1943); *Vandenberge v. Commissioner*, 3 T.C. 321, 327-328 (1944), affd. 147 F.2d 167 (5th Cir. 1945). Nor was the Court's jurisdiction enlarged to encompass such offsets when it was made an article 1 Court by the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487. *Continental Equities, Inc. v. Commissioner*, 551 F.2d 74, 82-84 (5th Cir. 1977).

Petitioners also ask us to take into account in entering our decisions herein certain prepayments made to respondent in 1982 and 1983, after the commencement of proceedings herein, which the petitioners designated as interest under Rev. Proc. 82-51, 1982-2 C.B. 839. Respondent opposes our consideration of this issue at this time for a variety of reasons, including lack of jurisdiction. In view of the request in petitioners' opening brief that the amounts so designated as interest be applied against the limit of liability of petitioner-donee-transferees Lois W. Poinier and W. Page Wodell under section 6324(b), it seems clear that such payments to the extent that they were in fact interest (as to which we express no opinion) were intended to be designated as interest on the decedent-transferor's gift tax liability. However, the amount of the gift tax deficiency determined herein against the decedent-transferor (exclusive of interest thereon) will approximate the limit of the petitioner-donee-transferees' liabilities under section 6324(b). Under these circumstances, we think what petitioners are asking us in effect to do is to establish for them the nature

---

[12]With respect to the sale of the trust assets, income taxes were paid by Lois W. Poinier for the calendar years 1971 and 1973, and by W. Page Wodell for the calendar years 1973 and 1976.

of their payments in 1982 and 1983 in order to provide them with ammunition to claim deductions for interest paid in those years in determining their income tax liabilities. This we are satisfied that we are without jurisdiction so to do, since there is no proceeding with respect to the income tax liabilities of any of the petitioners.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*